**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
Kamran B. Ahmadian (SBN 314566)
kahmadian@bakerlaw.com
Andrew C. Burnquist
aburnquist@bakerlaw.com
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:    310-820-8800
Facsimile:    310-820-8859

*Attorneys for Defendant*
CULLIGAN INTERNATIONAL
COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CULLIGAN INTERNATIONAL COMPANY, a Delaware corporation, d/b/a WWW.CULLIGAN.COM,<br><br>Defendants. | Case No.: 3:25-cv-00225-AJB-KSC<br><br>*[Assigned to the Hon. Anthony J. Battaglia]*<br><br>**DEFENDANT CULLIGAN INTERNATIONAL COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT**<br><br><u>**Hearing:**</u><br>Date:          July 24, 2025<br>Time:          2:00 p.m.<br>Courtroom:   4A |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 24, 2025 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 4A of the Anthony J. Battaglia United States Courthouse, located at 221 West Broadway, San Diego, CA 92101, Defendant Culligan International Company ("Culligan") will and hereby does move for an order dismissing Plaintiff Rebeka Rodriguez's ("Plaintiff") First Amended Complaint for Violation of California Invasion of Privacy Act ("FAC"). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff has not established Article III standing and otherwise fails to state a claim against Culligan upon which relief can be granted.

Culligan bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, and Proposed Order, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

Dated:  May 2, 2025

**BAKER & HOSTETLER LLP**
By:     */s/ Bethany G. Lukitsch*
          Bethany G. Lukitsch, Esq.
          Kamran B. Ahmadian, Esq.
          Andrew C. Burnquist, Esq.

          *Attorneys for Defendant*
          CULLIGAN INTERNATIONAL
          COMPANY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................ 3

III.  LEGAL STANDARD .......................................................................... 5

IV.   ARGUMENT ..................................................................................... 6

    A.   Plaintiff Lacks Article III Standing. .................................................. 6

    B.   Plaintiff Fails To State A Cause of Action Under Section 638.51 Because The TikTok Cookie is Not a "Trap and Trace" Device. ....................................................................................... 12

        1.   *The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance.* ....................................................... 13

        2.   *The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephonic Surveillance.* ................................................... 16

        3.   *Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy.* ......................................... 18

    C.   Plaintiff's Claim Fails Because Culligan Consented to The Use of The AdTech on Its Website. ................................................... 19

    D.   Plaintiff Fails to Allege the Required Scienter. ................................. 20

    E.   Plaintiff Cannot Bring a Private Right of Action under CIPA Without Injury. .......................................................................... 21

V.    CONCLUSION ................................................................................. 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995)................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 6

*Barragan v. Superior Court*,
148 Cal. App. 4th 1478 (2007) ......................................................... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................5, 6

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
635 F. App'x 351 (9th Cir. 2015) ..................................................... 11

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................................... 9

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ................................... 19

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010)............................................................ 6

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007).................................... 18

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)............................................... 20

*In re First T.D. & Inv., Inc.*,
253 F.3d 520 (9th Cir. 2001)............................................................ 14

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .........................9, 10, 22

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ............................................ 16

iv

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hartley v. Urb. Outfitters, Inc.*,
   2024 WL 3445004 (E.D. Pa. July 17, 2024) ........................................................ 8

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................ 11

*Heiting v. Taro Pharms. USA, Inc.*,
   2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .................................................... 21

*Hughes v. Vivint, Inc.*,
   2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................................... 9, 22

*Ji v. Naver Corp.*,
   2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ................................................... 12

*Licea v. Hickory Farms LLC*,
   2024 WL 1698147 (Cal. Sup. Mar. 13, 2024) .................................................... 15

*Lightoller v. Jetblue Airways Corp.*,
   2023 WL 3963823 (S.D. Cal. June 12, 2023) ...................................................... 9

*Lorillard v. Pons*,
   434 U.S. 575 (1978) ........................................................................................... 17

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. July 12, 2012) ............................................... 11

*Malibu Media, LLC v. Doe*,
   2019 WL 2537671 (D. Conn. June 20, 2019) .................................................... 19

*Massie v. Gen. Motors, LLC*,
   2022 WL 534468 (D. Del. Feb. 17, 2022) ......................................................... 11

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ........................................................................... 12

*Mejia v. Reed*,
   31 Cal. 4th 657 (2003) ....................................................................................... 14

*Mikulsky v. Noom, Inc.*,
   682 F. Supp. 3d 855 (S.D. Cal. 2023) .......................................................... 9, 22

*Miller v. Hearst Communications, Inc.*,
   2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) .................................................... 22

v

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
   2019 WL 3082160 (S.D. Cal. July 15, 2019) ........................................................ 6

*Smidga v. Spirit Airlines, Inc.*,
   2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) ......................................................... 12

*Sparshott v. Feld Ent., Inc.*,
   311 F.3d 425 (D.C. Cir. 2002) ............................................................................. 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................... 6

*In re the Application of the U.S. for an Ord. Authorizing the
   Installation & Use of a Pen Reg. & Trap & Trace Device*,
   890 F. Supp. 2d 747 (S.D. Tex. 2012) ........................................................... 15, 16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................... 6

*In re U.S.*,
   441 F. Supp. 2d 816 (S.D. Tex. 2006) ................................................................. 13

*United States v. Contreras*,
   905 F.3d 853 (5th Cir. 2018) ............................................................................... 10

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ............................................................... 10, 18, 19

*United States v. Jenkins*,
   2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) ........................................... 10, 11, 18

*United States v. Kidd*,
   394 F. Supp. 3d 357 (S.D.N.Y. 2019) ................................................................. 10

*United States v. Matish*,
   193 F. Supp. 3d 585 (E.D. Va. 2016) ................................................................. 11

*United States v. Pacheco*,
   225 F.3d 148 (2d Cir. 2000) ............................................................................... 17

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017) ........................................................................... 18, 19

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................................................. 17

vi

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ...........................................9, 11, 22

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. July 15, 2021) ................................................. 12

**Statutes**

Cal. Penal Code § 20 ......................................................................................20

Cal. Penal Code § 637.2 ................................................................................22

Cal. Penal Code § 638.50(c) .........................................................................13

Cal. Penal Code § 638.51 *et seq.* ...........................................................*passim*

Cal. Penal Code § 638.52 *et seq.* ............................................................13, 14

Cal. Penal Code § 638.53 ........................................................................13, 14

**Rules**

Fed. R. Civ. P. 12(b) *et seq.*........................................................................5, 6

**Other Authorities**

2015 California Assembly Bill No. 929, California 2015–2016
Regular Session ................................................................13, 16, 17, 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    <u>INTRODUCTION</u>

This action is part of a tidal wave of "pixel" litigation filed in state and federal courts that seeks to expand a narrow provision of the California Invasion of Privacy Act ("CIPA") to penalize the routine operation of commercial websites. Plaintiff Rebeka Rodriguez ("Plaintiff") is a self-described "tester," who "works… to ensure that companies abide by the privacy obligations imposed by California law." Plaintiff's First Amended Complaint for Violation of the California Invasion of Privacy Act ("FAC"), ¶ 6. Plaintiff's "work" consists of visiting publicly available websites, finding "violations" of her own privacy, and filing cookie cutter lawsuits seeking statutory and punitive damages. And, for Plaintiff, her testing business is booming. In the past two years alone, Plaintiff has filed at least *twenty-six* lawsuits asserting various claims for violations of her right to digital privacy.[1]

---

[1] *See, e.g.*, *Rodriguez v. Zwilling J.A. Henckels, LLC*, Docket No. 2:25-cv-02862 (C.D. Cal. Apr. 2, 2025); *Rodriguez v. Shop LC Glob. Inc.*, Docket No. 25STCV08946 (Cal. Super. Ct. Mar. 26, 2025); *Rodriguez v. The Mathworks, Inc.*, Docket No. 3:25-cv-00564 (S.D. Cal. Mar. 10, 2025); *Rodriguez v. Culligan International Company*, Docket No. 3:25-cv-00225 (S.D. Cal. Jan. 31, 2025); *Rodriguez v. Fanduel Inc.*, Docket No. 2:24-cv-11160 (C.D. Cal. Dec. 27, 2024); *Rodriguez Vs. EcoATM, LLC*, Docket No. 30-2024-01448540 (Cal. Super. Ct. Dec. 26, 2024); *Rodriguez v. Wheels in Motion Inc.*, Docket No. 24STCV29080 (Cal. Super. Ct. Nov. 6, 2024); *Rodriguez v. OX Car Care, Inc.*, Docket No. 24STCV28965 (Cal. Super. Ct. Nov. 4, 2024); *Rodriguez v. Neurasignal, Inc.*, Docket No. 24STCV28937 (Cal. Super. Ct. Nov. 4, 2024); *Rodriguez v. Maverik, Inc.*, Docket No. 24STCV26824 (Cal. Super. Ct. Oct. 15, 2024); *Rodriguez v. Autotrader.com, Inc.*, Docket No. 2:24-cv-08735 (C.D. Cal. Oct. 10, 2024); *Rodriguez v. Service Lighting and Electrical Supplies, Inc.*, Docket No. 2:24-cv-08387 (C.D. Cal. Sep. 30, 2024); *Rodriguez v. Universal Music Grp., Inc.*, Docket No. 24SYCV19011 (Cal. Super. Ct. Jul. 30, 2024); *Rodriguez v. Craft Mach. Inc.*, Docket No. 24STCV11639 (Cal. Super. Ct. May 8, 2024); *Rodriguez v. Insightful.io Inc.*, Docket No. 24STCV10395 (Cal. Super. Ct. Apr. 25, 2024); *Rodriguez v. Ranker, Inc.*, Docket No. 24STCV09097 (Cal. Super. Ct. Apr. 10, 2024); *Rodriguez v. Olly Pub. Benefit Corp.*, Docket No. 24STCV09086 (Cal. Super. Ct. Apr. 10, 2024); *Rodriguez v. King Lee Chem. Co.*, Docket No. 24STCV04584 (Cal. Super. Ct. Feb. 22, 2024); *Rodriguez v. Ingram Micro Inc.*, Docket No. 24STCV04480 (Cal. Super. Ct. Feb. 22, 2024); *Rodriguez v. Hanover Prods. Co.*, Docket No. 24STCV00929 (Cal. Super. Ct. Jan. 12, 2024); *Rodriguez v. Lexjet, LLC*, Docket No. 24STCV00018 (Cal. Super. Ct. Jan. 2, 2024); *Rodriguez v. Fiskars Brands, Inc.*, Docket No. 2:23-cv-07814 (C.D. Cal. Sep. 19, 2023); *Rodriguez v. Bissell Inc.*, Docket No. 2:23-cv-05447 (C.D. Cal. Jul. 7, 2023); *Rodriguez v. Ingenious Med, Inc.*, Docket No. 30-2023-01334980 (Cal. Super. Ct. Jul. 6, 2023); *Rodriguez v. Aquatic Sales Solutions LLC*, Docket No. 2:23-cv-05198 (C.D. Cal. Jun. 30, 2023); *Rodriguez v. Harley-Davidson Motor Company, Inc. et al*, Docket No. 2:23-cv-03931 (C.D. Cal. May 22, 2023).

Like her initial Complaint, Plaintiff's FAC asserts a single cause of action against Defendant Culligan International Company ("Culligan" or "Defendant") for a violation of CIPA, claiming that Culligan's use of various popular and common digital advertising software ("AdTech"), including the TikTok web beacon ("TikTok Cookie"), constitutes an illegal "trap and trace" device under Cal. Penal Code § 638.51. Simply put, Plaintiff seeks to criminalize one of the most ubiquitous aspects of everyday life—internet browsing. Plaintiff's claim, however, suffers from numerous flaws, none of which can be rectified through amendment.

*First*, Plaintiff lacks Article III standing to bring this claim. Plaintiff's FAC is premised entirely on an alleged pure statutory violation. As the Supreme Court has made clear, however, an injury in law is not an injury in fact. Plaintiff must allege something beyond a mere statutory violation to establish Article III standing—she must present factual allegations showing that she suffered a cognizable injury. However, as multiple courts have recognized, a plaintiff cannot claim a reasonable expectation of privacy in information she knowingly and intentionally exposes by visiting a website where a privacy invasion is not only anticipated, but pursued. That is exactly the case here. Plaintiff's express intentions in visiting Culligan's website fatally undercut her claim, leaving her without an injury in fact and, accordingly, without standing. Not only has Plaintiff made factual allegations demonstrating that as a tester she *could not* be harmed, but Plaintiff fails to allege any facts about her visit to the Culligan website – a flaw repeated despite Culligan's motion to dismiss the original Complaint on the same grounds.

*Second*, even if Plaintiff had standing (she does not), Plaintiff's claim would still fail because the AdTech at issue does not qualify as a "trap and trace device" under CIPA as a matter of law. Specifically, the alleged software clearly falls outside of CIPA's intended scope based on the statute's plain language, legislative history, and analogous case law. Indeed, a "trap and trace device" involves the recording of telephone numbers associated with incoming calls and does not extend to software

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

embedded on a website.  Moreover, accepting Plaintiff's strained reading of CIPA would have vast and harmful public policy implications.  The very function of the internet relies on the exchange of information from a web user's browser to website, and without it, the internet could not exist.

*Third*, even if the AdTech could be considered a trap and trace device, no violation of Section 638.51 exists because Culligan, as the website's owner and a "user" of its "electronic communication service," plainly gave its consent.

*Fourth*, Plaintiff has failed to allege any facts (nor can she) showing that Culligan had the criminal intent necessary to establish a violation of CIPA—a criminal statute that requires a showing of scienter.

*And fifth*, Plaintiff fails to allege any actual harm, which in addition to its necessity for standing purposes also is necessary under the plain text of CIPA.  A private cause of action for an alleged violation of CIPA can only be brought by a plaintiff "who has been injured" by the alleged violation.  Plaintiff's failure to plead facts establishing this element, and her lack of actual injury, is just as fatal to her claim under Rule 12(b)(6) as it is under Rule 12(b)(1).

For these reasons, and as further explained below, this Court should grant Culligan's Motion and dismiss Plaintiff's FAC with prejudice.

## II.    BACKGROUND

Defendant Culligan is a water treatment company that provides water services for customers in their homes, offices, businesses and industrial facilities around the world.  Culligan operates *www.culligan.com* (the "Website"), which is a consumer facing website that allows visitors to: (1) browse Culligan's products and services, (2) find local Culligan dealers, and (3) set up a free water consultation with a Culligan representative.  *See* www.culligan.com (last visited: April 30, 2025).

Plaintiff, by her own admission, is a "tester," who "works… to ensure that companies abide by the privacy obligations imposed by California law."  FAC, ¶ 6; *see also Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *4 (C.D. Cal. Feb. 14, 2023)

("Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA against various businesses that operate websites.").

In her original Complaint, filed on January 30, 2025, Plaintiff alleged that Culligan "installed [the TikTok Cookie] on its Website … in order to identify website visitors." Compl. ¶ 13.  Plaintiff further alleged that the TikTok Cookie "acts via a process known as 'fingerprinting' … [collecting] as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." *Id.*, ¶ 14. Plaintiff alleged that the TikTok Cookie gathers device and browser information, geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website to send user details to TikTok." *Id.*, ¶ 15.  In addition to gathering such data automatically, Plaintiff alleged that when website visitors voluntarily provide information to Culligan—such as their phone number or email address—that information is also sent to TikTok. *Id.*, ¶ 17.

On March 20, 2025, Culligan moved to dismiss Plaintiff's Complaint under Rule 12(b)(1) and Rule 12(b)(6).  Rather than opposing Culligan's Motion, Plaintiff filed the FAC on April 4, 2025.  Despite the addition of 145 new allegations—the majority of which were readily available to and/or known by Plaintiff at the time she originally filed—Plaintiff's FAC fails to cure the same fatal flaws that doomed her Complaint.

Plaintiff includes reference to thirty-five different AdTech, but—outside of indecipherable screenshots and conclusory assertions—fails to connect them to *Plaintiff's* purported visit to Culligan's Website.  *See generally*, FAC.  Plaintiff generalizes about what the AdTech *might* be capable of doing (primarily on other websites, not Culligan's), but fails to identify any specific information captured by the AdTech in connection with her own visit to the Website.  This is not surprising, given that ***Plaintiff does not allege any facts about her alleged visit to the Website***.

*See id.*  Rather, Plaintiff only alleges that ***sometime*** in August 2024, she visited the Website as a "***consumer privacy advocate*** *tester*" who ensures that "companies abide by the privacy obligations imposed by California law." *Id.*, ¶¶ 6, 154.  Plaintiff fails to explain how she arrived at the Website (i.e., did she click on a link within her TikTok account), or any other details regarding her visit. *See generally, id.*  Plaintiff does not allege that she ever affirmatively provided ***any*** information to Culligan, such as her name or email address, such that it could possibly have been captured by the AdTech, nor does she allege that she was referred to the Website from another URL, such that the AdTech would have captured "referral tracking" or "url tracking" information. *See id.*

## III.   LEGAL STANDARD

Under Federal Rule 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the core of the Court's jurisdictional inquiry is Article III's standing requirement.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).  The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*  Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (Battaglia, J.) (cit. omitted).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, wholly unelaborated claims do not fare well upon a motion to dismiss, as courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Performance Designed Prods. LLC v. Plantronics, Inc.*, 2019 WL 3082160, at *3 (S.D. Cal. July 15, 2019) (Curiel, J.) (cit. omitted).

## IV.    ARGUMENT

### A.    Plaintiff Lacks Article III Standing.

Plaintiff's FAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff fails to allege any facts that could plausibly demonstrate she has Article III standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Whether a harm qualifies as "concrete" hinges on whether the alleged injury to the plaintiff bears a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). A "bare procedural violation divorced from any concrete harm ... does not suffice for Article III standing." *Id.* at 440. Indeed, an injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. This is because, for purposes of Article III standing, "*an injury in law is not an injury in fact*." *Id.* (emph. added). Here, Plaintiff's FAC falls woefully short of establishing that she suffered *any injury*—let alone a concrete injury sufficient to establish Article III

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  standing.

2        At the outset, multiple courts have already held that a tester plaintiff who

3  "seek[s] out invasions of privacy… cannot claim that she had a reasonable

4  expectation to privacy, and therefore lacks an injury in fact sufficient to establish

5  standing." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *2 (C.D. Cal.

6  Mar. 14, 2025) ("*Autotrader I*"); see also *Byars v. Sterling Jewelers, Inc.*, 2023 WL

7  2996686, at *4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of

8  standing where the tester plaintiff lacked a reasonable expectation of privacy and

9  therefore suffered no injury in fact).

10        This principle is by no means novel—and Plaintiff is no stranger to it. **She

11  has already had multiple CIPA claims dismissed with prejudice this year on

12  precisely these grounds.**  *See Autotrader I, supra*, at *1; *Rodriguez v.

13  Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025)

14  ("*Autotrader II*").

15        In the *Autotrader* litigation, Plaintiff brought claims under CIPA §§ 631 and

16  638, expressly identifying herself—as she does here (*see* FAC, ¶ 6)—as a privacy

17  "tester." *Autotrader I, supra*, at *2 ("Plaintiff is a tester that seeks out invasions of

18  privacy.").  The court emphasized that "[i]t was no accident that she visited the

19  Website and allegedly had her privacy violated." *Id*.  Rather, she "visited the

20  Website 'fully expect[ing]' it to violate her privacy 'so that she could file this

21  action.'"  *Id.*  Accordingly, the court held that because Plaintiff "expected an

22  invasion of privacy, she cannot claim that she had a reasonable expectation to

23  privacy, and therefore lacks an injury in fact sufficient to establish standing." *Id.*

24  The court dismissed Plaintiff's § 631 claim with prejudice, and less than a month

25  later, dismissed her § 638 claim *sua sponte* for the same reason. *Id.*; *Autotrader II*,

26  supra, at *2.

27        Plaintiff should fare no better here. Having visited the Website for the express

28  purpose of engineering a supposed invasion of her privacy, she cannot now plausibly

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

assert that the fulfillment of her objective violated a "reasonable expectation of privacy." As in the *Autotrader* litigation, the Court should dismiss Plaintiff's § 638 claim with prejudice for lack of standing.

But even if the Court were to disregard her "tester" status, Plaintiff fails to establish standing otherwise because Plaintiff does not allege ***any facts about her visit to the website whatsoever***, nor does her FAC identify any information that if collected (a fact she does not allege) would arise to the level of a privacy invasion. For example, Plaintiff ***does not*** allege: (1) the date of her visit; (2) whether this was her first and only visit to the Website; (3) what "electronic impulses" of hers were captured (if any); (4) what information those electronic impulses allegedly contained; (5) how she got to the Website;[2] (6) what (if anything) she did during that visit; (7) whether she visited anything other than the homepage; or (8) that she entered any personal or identifying information into the website. *See generally*, FAC.

In fact, the only "allegations" that specifically relate to Plaintiff is that she visited the Website in "August 2024", FAC, ¶ 6, and that "Plaintiff has a TikTok account."[3] FAC, ¶ 75. Plaintiff's remaining allegations about the AdTech are cast in hypothetical and conclusory terms and are entirely untethered to Plaintiff's own experience. *See generally, id.* General allegations about what the AdTech *may be capable* of collecting do not sufficiently establish what the AdTech *actually collected* from Plaintiff (if anything). *See e.g., Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that

---

[2] Plaintiff alleges that the TikTok Cookie can collect "referral tracking" or "url tracking" information. *See* FAC, ¶ 67. But Plaintiff does not allege that she was referred to the Website from another URL, such that the TikTok Cookie would have captured "referral tracking" or "url tracking" information during ***her*** visit.

[3] Notably, however, Plaintiff fails to allege whether she has any other accounts associated with the dozens of other kinds of AdTech she includes in the FAC—including LinkedIn, Facebook, Google, and Microsoft. *See generally, id.*

1   technology actually collected.").   Aside from these vague allegations, Plaintiff
2   cannot plausibly claim that any personal information was collected from her or
3   *caused her harm*, because she has not alleged any basic facts about her interactions
4   with the Culligan Website.

5         Federal district courts have routinely dismissed similar claims for lack of
6   standing, particularly where—as is the case here—the plaintiff fails to allege that
7   any "specific personal information" was intercepted by or improperly disclosed to a
8   third party. *See, e.g.*, *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D.
9   Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not
10  identify any personal or sensitive information she disclosed on the website");
11  *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12,
12  2023) (Huff, J.) ("Plaintiff has failed to adequately allege that she suffered any
13  concrete harm that bears a close relationship to the right to control personal
14  information, meaning Plaintiff has failed to establish an injury in fact."); *Mikulsky*
15  *v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (Huff, J.) (motion to
16  dismiss CIPA claim for lack of standing granted where no personal information was
17  disclosed to or collected by the defendant); *Hughes v. Vivint, Inc.*, 2024 WL
18  5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal.
19  Aug. 5, 2024) (motion to dismiss granted for lack of injury-in-fact from defendant's
20  use of "TikTok Software" on its website); *Gabrielli v. Insider, Inc.*, 2025 WL
21  522515, at *8 (S.D.N.Y. Feb. 18, 2025) (dismissing Section 638.51 claim for lack
22  of standing); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *4 (S.D.N.Y.
23  Feb. 13, 2025) (same).[4]

24  _____

25  [4] To the extent Plaintiff seeks to rely on her baseless allegations that the collection
    of otherwise anonymous information could be used by third parties to make an
26  identification through a "fingerprinting" process (*see* FAC, ¶¶ 21-29; ¶ 84), any such
    attempt must fail.  *See Vivint, Inc.*, *supra*, at *5 (holding that without an allegation
27  that Plaintiff has an account associated with the relevant third party's platform such
    that the collection of otherwise anonymous information could be used to make an
    identification through the "fingerprinting" process, no privacy harm could have
28  occurred).  Here, Plaintiff alleges only that she maintained an account with TikTok.
    FAC, ¶ 75.  Plaintiff *does not allege* that she maintained accounts with any of the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Furthermore, based on Plaintiff's lone allegation about her single visit to the Culligan website (which very likely was made at the direction of her counsel), the only plausible inference that can be made is that (at most) Plaintiff's IP address was provided and collected by Culligan—a voluntary exchange that is necessary to operate the website and which does not constitute an invasion of privacy sufficient to establish standing. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."). This is because an IP address does not "personally identify" any one person. At most, it can sometimes identify the *general* location of the gateway (or router) that the user's device was connected to when browsing the internet. *See United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) ("To be sure, an IP address does not refer to a physical location itself."). Notably, however, an IP address does not indicate *who* is using the device, and if more than one device is used on a network, it does not differentiate between devices on that local network. As one court explained: "IP address information … does not follow [a] person around. Indeed, *it does not even identify the user*, just the location of internet access." *United States v. Jenkins*, 2019 WL 1568154 at \*4 (N.D. Ga. Apr. 11, 2019) (emph. added); *see also United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (stating that IP addresses have no "bearing on any person's day-to-day movement.").

Accordingly, because an IP address does not identify a person, courts have repeatedly rejected any notion of a reasonable expectation of privacy in them. *Forrester*, 512 F.3d at 510; *Gabrielli*, 2025 WL 522515 at \*4 ("…an IP address

---

other thirty-four AdTech providers she refers to in the FAC. *See generally*, *id.* But Plaintiff's TikTok allegations cannot save her, as Plaintiff only alleges that "Neustar" engaged in "fingerprinting." *Id.* at ¶ 84. The remainder of Plaintiff's "fingerprinting" allegations relate only to what "fingerprinting" technologies are *generally* capable of. *See id.*, at ¶ 21-29. Moreover, it is illogical that Plaintiff is somehow harmed by providing TikTok with information – such as name, type of device, email, etc. – they likely already have as a result of her participation on their platform.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    which cannot identify an individual user and at most conveys general geographic
2    information does not justify [that a legally protected privacy interest is implicated]");
3    *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) ("Generally, one
4    has no reasonable expectation of privacy in an IP address when using the Internet.");
5    *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is
6    no legally protected privacy interest in IP addresses alone[.]"); *Jenkins*, 2019 WL
7    1568154, at *5 ("Defendant Jenkins had no reasonable expectation of privacy in an
8    IP address assigned by the Internet Service Provider[.]"); *Xu*, 2025 WL 488501 at
9    *4 (collecting cases).[5]

10         For the same reason, to the extent the Court accepts Plaintiff's conclusory
11   and factually unsupported allegations that Culligan's AdTech "will collect and track
12   …the Website user's operating system name, operating system version number,
13   browser name, browser version number, browser language, screen resolution,
14   geolocation data, email address, mobile ad IDs, embedded social media identities,
15   customer and/or loyalty IDs, cookies and device signature," there can be no
16   expectation of privacy in such information when it is associated only with an IP
17   address that does not identify *any* individual, including Plaintiff.  *See* FAC, ¶ 156;
18   *see also*, *Massie v. Gen. Motors, LLC*, 2022 WL 534468 (D. Del. Feb. 17, 2022)
19   ("Plaintiffs fail to explain how either GM's or Decibel's possession of anonymized,
20   non-personal data regarding their browsing activities on GM's website harms their
21   privacy interests in any way.").  Indeed, courts have routinely found that there is no
22   protectable privacy interest in such information even when it is connected to an
23   individual identifier.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D.

24

25   [5] Given these characteristics, an IP address is analogous to a ZIP code.  With only a
     ZIP code, you can identify the general area where something is located but cannot
26   glean where exactly in that ZIP code something is located.  Courts in California and
     elsewhere have routinely found that disclosure of a ZIP code alone does not result in
27   an invasion of privacy.  *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F.
     App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or
28   constitutional privacy right causes of action for requesting, sending, transmitting,
     communicating, distributing, or commercially using ZIP Codes.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. July 12, 2012) ("The information disclosed to third parties … including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. July 15, 2021) (finding no cognizable privacy interest in keystrokes, page clicks, page views, and browsing activities); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"); *Smidga v. Spirit Airlines, Inc.*, 2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024) ("[C]ourts have held that even the collection of basic contact information [when] plaintiffs merely visited the website are not [] concrete harms.").

Because Plaintiff has not alleged concrete harm to her privacy, she has failed to satisfy the injury in fact requirement for Article III standing and the FAC must be dismissed. *See Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal[.]").

**B.    Plaintiff Fails To State A Cause of Action Under Section 638.51 Because The TikTok Cookie is Not a "Trap and Trace" Device.**

Even if Plaintiff can establish standing (which she cannot), the alleged AdTech does not constitute a trap and trace device as a matter of law.  Plaintiff (and her counsel) advance a grossly expanded definition of a "trap and trace" device well beyond its intended use (as an investigatory tool for law enforcement) by applying it to a popular internet technology.  Plaintiff's application should be rejected for several reasons. *First*, the statutory framework of CIPA makes clear that Section 638.51 only applies to trap and trace devices that are used in ***telephonic*** surveillance.  *Second*, the legislative history ***confirms*** that Section 638.51 was intended only to apply to telephone devices.  And *third*, applying CIPA to website software would be contrary to public policy and common sense as it would essentially criminalize basic website functionality and overload the courts.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1.    ***The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance.***

Cal. Penal Code § 638.51 makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Historically, pen registers and trap and trace devices have been used by law enforcement personnel to capture data related to telephone calls and conduct telephonic surveillance. *See In re U.S.*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ("In 1986, Congress enacted the ECPA to regulate the process under which law enforcement could install…trap and trace devices, ***which capture phone numbers of incoming calls***."); *see also* California Bill Analysis, A.B. 929 Assem. ("Bill Analysis, A.B. 929") (April 21, 2015); *see also* Bill Analysis, A.B. 929 (pen registers and trap and trace devices "generally track ***incoming and outgoing telephone calls***" and "are often utilized by law enforcement to track which people in an investigation are communicating with one another.") (emph. added).

CIPA *generally* defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). While the definition of "trap and trace" does not explicitly address whether general website software is covered under CIPA; given its historical usage, and the cross-referenced provisions in Sections 638.52 and 638.53, it clearly does not.

Indeed, as outlined in Sections 638.52 and 638.53, *before **law enforcement*** can use a trap and trace device they must obtain a court order. To obtain a court order, however, law enforcement must provide specific information related to ***the particular telephone they are seeking to trap and trace***. *See, e.g.*, Cal. Penal Code § 638.52(d)(1)-(3) (requiring that an order "authorizing or approving the installation and use of a pen register or a trap and trace device" shall specify, *inter alia,* the

13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"identity, if known, of the person to whom is leased or in whose name is listed the *telephone line* to which the pen register or trap and trace device is to be attached" and the "*number* and, if known, physical location of the *telephone line* to which the pen register or trap and trace device is to be attached[.]"; Cal. Pen. Code, § 638.52 (c) ("Information acquired solely pursuant to the authority for a pen register, or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the *telephone number*.") (emph. added).

The numerous references to telephones or telephone numbers in Sections 638.52 and 638.53 demonstrate that a "pen register" and "trap and trace device" apply only to the interception of specific, targeted *telephonic communications*, and not to IP addresses or other data, if any, captured by general website advertising technology.[6] To hold otherwise would lead to absurd results. In effect, a party could be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued. That is what Plaintiff's interpretation is seeking here. A court order to use the AdTech as a "trap and trace" device could never be issued because compliance with Section 638.52 requires the identification of a "telephone line" to which the software could "attach." *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484 (2007) (Under California law, courts should "not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature."). The only logical way to give effect to both Sections 638.51 and 638.52 is to limit the applicable trap and trace devices to those that could be used

---

[6] When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). California's "well-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). As such, Sections 638.51 and 638.52 "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Id.*

after obtaining a court order if sought.  Because the AdTech at issue here does not involve telephonic communications, it cannot be connected to a telephone line, and therefore a court order could never be obtained, Section 638.51 does not apply.

Further, several cases involving similar allegations have held that a "trap and trace device" is limited to its more traditional definition and does not apply to website-use technologies like the AdTech complained of here.  *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024); *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012).  In *Hickory Farms*, the plaintiff sued for violation of the trap and trace laws based on the defendant's installation of software on its website.  The court dismissed, finding allegations related to "a 'device' without any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device," fail to allege a violation of Section 638.51.  *Id.*

In *In re Trap & Trace Device*, the court considered whether a "stingray" device was either a pen register or a trap and trace device under identical language used in the analogous federal Pen/Trap statute.  890 F. Supp. 2d at 748.  There, the stingray was capable of "detect[ing] radio signals emitted from wireless telephone numbers in the vicinity of the [subject of the investigation]" and "identify[ing] the telephones (e.g., by transmitting the telephone's serial number and phone number to the network for authentication)," in order to ultimately identify "the telephone number corresponding to the [Subject's] Telephone."  *Id*.  The court focused on the plain language of the Pen/Trap statute, including the prerequisites that need to be met before an order authorizing a trap and trace or pen register device can be issued, and found that the stingray did not qualify as one such device.  *Id*.  Looking to Congress's "mandate" that "the telephone number or other such identifier" of the target of the device be included in the order, the court questioned how it could possibly include the target number if the device was being used to identify the target number in the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

15

first place. *Id.* at 751. In other words, unless a trap and trace device is attached or assigned to a specific telephone or account, as opposed to *all* devices within a general vicinity, it cannot be a trap and trace device within the Pen/Trap statute's purview.

The factual scenario here is even more attenuated than the stingray scenario, but the *In re Trap & Trace Device* logic still applies. Plaintiff does not allege that Culligan attached a trap and trace device to *her* computer. Instead, she claims that the AdTech was installed ***on Culligan's website*** which she voluntarily visited. FAC, ¶ 56. Again, as discussed above, this theory cannot be squared with the plain language of CIPA and requires the dismissal of the FAC with prejudice.[7]

### 2. *The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephonic Surveillance.*

As outlined above, the explicit wording of Section 638.51 clearly indicates that it pertains solely to telephone communications. Should the Court find any ambiguity and want guidance beyond its plain language, the legislative history of Section 638.51 further supports Culligan's position, confirming that the Legislature did not intend for Section 638.51 to apply to website technology like the AdTech alleged here.

In 2015, the Legislature enacted (and the Governor signed) Assembly Bill 929, which introduced various provisions to the California Penal Code regarding the "trap and trace device" language relevant to this case. *See* 2015 California Assembly Bill No. 929, California 2015–2016 Regular Session ("Assembly Bill 929"). The Legislative Counsel's Digest, at the beginning of Assembly Bill 929, explained the purpose of the bill: to "clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined ***from the telephone number***." *Id.* (emph. added). Additionally, Regular Session

---

[7] Any reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) (Bashant, J.) would be misplaced. In *Greenley*, the court found that the plaintiff plausibly alleged that a third-party data broker violated Section 638.51 by surreptitiously installing tracking software ***on plaintiff's cell phone***. Here, unlike *Greenley*, the AdTech is allegedly embedded on Culligan's Website—there is no allegation or connection to a telephone of any kind. *See generally*, FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

comments clearly limit the application to a telephone.  *See* Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016 Regular Session (June 15, 2015) ("…a pen register/trap and trace device *only records the numbers dialed to or from a particular phone number*."); Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015)) ("… a 'pen register' [] allows law enforcement officers to record all outgoing *numbers from a particular* **telephone line**.") (emph. added).

Had the Legislature intended to prohibit data collection from website software or cookies, it could have explicitly done so.  There is nothing in the legislative history that supports the application of Section 638.51 to the operation of website technology despite the prevalent use of such technology at the time it was enacted.  Indeed, unlike other portions of CIPA, the relevant provisions, § 638.50 *et seq.*, were enacted in 2015—at a time when the internet and website tracking software were both known and highly utilized.  Thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future (unimaginable) technologies.  *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227 (C.D. Cal. 2017).

Further, courts interpreting the exact language that CIPA adopted from the federal Pen Register Act have concluded that the prohibited devices apply solely to those that can be "attached to a telephone line." *See, e.g., Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).  Specifically, the *Cellular Tel. Digit. Analyzer* court opined that the specific language and references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent." *Id.*; *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Where … Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (Under the "whole act rule," a statutory provision is to be "interpret[ed] . . . in a way that

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.") (cit. omitted).  Similarly, the numerous references to telephone communications within the statute provide clear insight into the legislature's intent.

Thus, the statute's plain language and legislative history all point to the same conclusion: Section 638.51 *does not* apply to the AdTech embedded on Culligan's Website.

### 3.    *Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy.*

Setting aside that Plaintiff has not alleged any facts to suggest that any information was collected from her during her visit to the Website (which is dispositive), Plaintiff's strained interpretation of Section 638.51 would essentially break the internet by either significantly impairing how websites operate and criminalizing even basic general website functionality, or requiring the logical absurdity of companies cluttering the courts, continuously seeking court orders in advance of every new IP address created.  For example, Plaintiff generally alleges that the AdTech "gathers device and browser information, geographic information, referral tracking, and url tracking[.]" FAC, ¶ 67.  As discussed above, these allegations merely suggest that Culligan obtains *IP addresses* from visitors, which identify the approximate geographic location of the device at the time they visited the website.  But, website owners *must* "necessarily capture [a visitor's IP address] … to operate the website." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007); *see also United States v. Ulbricht*, 858 F.3d 71, 84 (2d Cir. 2017) (An IP address "indicates the online identity of the communicating device."); *Jenkins*, 2019 WL 1568154 at *4 ("IP address information merely shows the location at which a device accesses the internet during a specific session.").

Not only must a user provide their device's IP address to view a given webpage, but this offering is also *voluntarily* and *intentionally* made by the user to send their viewing request.  *See Forrester*, 512 F.3d at 510 ("IP addresses are not

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

merely passively conveyed through third party equipment but rather are voluntarily turned over in order to direct the third party's servers."). By virtue of this voluntary exchange, courts—including the Ninth Circuit—have held that internet users **have no expectation of privacy in their devices' IP address**. *See Ulbricht*, 858 F.3d at 96 ("[A] 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," including "IP addresses."); *Forrester*, 512 F.3d at 510 ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address.").

Accordingly, the mere collection of an IP address cannot be a violation of Section 638.51. Finding otherwise would open the door for *any* website owner to theoretically incur *criminal* liability anytime someone visited their website, making it logically and financially unsound to operate a website. The reverberating effect that this decision would have on internet usage and the economy at large cannot be overstated. As one court aptly recognized, "the Internet could not function" if we criminalize the collection of IP addresses "because standard computer operations require recording IP addresses." *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009).

### C. Plaintiff's Claim Fails Because Culligan Consented to The Use of The AdTech on Its Website.

Even *assuming arguendo* that the AdTech can constitute a trap and trace device (which it cannot), Plaintiff's claim would still fail because Section 638.51 includes an exception for the use of pen registers and trap and trace devices "if the **consent of the user of that service** has been obtained." Cal. Pen. Code § 638.51 (b)(5) (emph. added). Here, based on Plaintiff's own allegations, Culligan (and not Plaintiff) is the "user" of the AdTech software, an electronic service, and Culligan has "consented" to its limited use on its Website. *See, e.g.*, FAC, ¶ 77 ("**Defendant has installed on its Website** a spyware pixel…") (emph. added).

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The statute's use of the singular "user" for Section 638.51's consent requirement is a notable and intentional departure from other provisions of CIPA (such as Section 631's prohibition on wiretapping), that require the consent of all parties. Because pen registers and trap and trace devices do not provide the "content of the messages," they are not subject to the same level of scrutiny as wiretaps. *See* Assembly Bill 929, California 2015-2016 Regular Session. Indeed, if it was a requirement to obtain the consent of *all* parties before installing a trap and trace device, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which Section 638.51 was modeled). A caller ID system, after all, enables the recipient of an inbound communication to identify and record the identity of the initiating party. *See id*. Therefore, if statutes like Section 638.51 were interpreted (contrary to their text) to require the consent of all parties to any communication, then all users of caller ID would be subject to criminal liability—since such users do not first obtain consent from incoming callers before retrieving their identity through the caller ID system. *See id.*; *see also In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (finding that because website operators are the "users" of advertising cookies placed on their website—not the website visitors—a similar consent exception in the Electronic Communications Privacy Act ("ECPA") applied).

The same reasoning applies to Section 638.51 and warrants the same conclusion. The "user" consent exception under Section 638.51(b)(5) applies to Culligan, and Plaintiff has expressly alleged that Culligan consented to the use of the AdTech on its Website. Consequently, Plaintiff's claim fails.

### D.    Plaintiff Fails to Allege the Required Scienter.

Because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Even if the

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

AdTech would qualify as a trap and trace device (it does not), to be liable under Section 638.51, Culligan must have installed the AdTech with knowledge and intent that it illegally identifies anonymous visitors without a court order.

Here, Plaintiff has not alleged (nor can she) that Culligan had any such intent or knowledge. Even accepting the FAC's allegations as true, *it is third parties and not Culligan* who are able to identify the source of a wire or electronic communication. *See e.g.*, FAC, ¶ 84 ("Simply put, *the Neustar spyware collects* as much data as it can about an otherwise anonymous visitor to the Website *and matches it with existing data Neustar has acquired and accumulated* about hundreds of millions of Americans"); ¶ 67 ("The TikTok [Cookie] gathers device and browser information, geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website *to send user details to TikTok*.") (emph. added). Thus, Plaintiff has not alleged any facts (nor can she) that *Culligan* did any identifying or had any intent to do so in violation of criminal law. To the contrary, Plaintiff actually alleges the opposite—perfectly legal activity (analytics and advertising). *See* FAC, ¶ 151 ("the [AdTech] is designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue"). Plaintiff's inability to allege that Culligan possessed the requisite scienter is dispositive of her claim. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Without factual allegations demonstrating the necessary criminal intent, Plaintiff's purported criminal violation fails, and must be dismissed with prejudice.

### E.   Plaintiff Cannot Bring a Private Right of Action under CIPA Without Injury.

Finally, Plaintiff's claim also fails because she has not suffered any injury as a result of any alleged violation of CIPA. By CIPA's very terms, a plaintiff may only

21

bring a private right of action if they have "***been injured by a violation*** of this chapter[.]" Cal. Penal Code § 637.2 (emph. added).  In other words, to bring suit for a violation of CIPA, Plaintiff must adequately allege not only a violation but also that the violation resulted in some other injury.  *Miller v. Hearst Communications, Inc.*, 2012 WL 3205241, at *7 (C.D. Cal. Aug. 3, 2012) ("Because Plaintiff fails to allege a cognizable injury, she lacks statutory standing for her…claim, regardless of whether her allegations are sufficient to state a violation of the…law").

As detailed in Section IV.A, Plaintiff has not suffered a cognizable injury here to support her CIPA claim.  She has not identified any actual concrete harm suffered through the Website's data practices that in addition to an alleged technical statutory violation would support a claim.  *See, e.g., Hughes*, 2024 WL 5179916; *Mikulsky*, 682 F. Supp. 3d at 864-65; *Gabrielli*, 2025 WL 522515; *Xu*, 2025 WL 488501. Plaintiff therefore cannot bring a private action under CIPA against Culligan.

## V.  **CONCLUSION**

For all of the foregoing reasons, Culligan respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated:  May 2, 2025          **BAKER & HOSTETLER LLP**

By:    */s/ Bethany G. Lukitsch*
       Bethany G. Lukitsch
       Kamran B. Ahmadian
       Andrew C. Burnquist

       *Attorneys for Defendant*
       CULLIGAN INTERNATIONAL
       COMPANY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES