Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
**PACIFIC TRIAL ATTORNEYS, APC**
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CULLIGAN INTERNATIONAL COMPANY, a Delaware corporation, d/b/a WWW.CULLIGAN.COM,

Defendant.

Case No. 3:25-cv-00225-AJB-KSC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

[Pl.'s Request for Judicial Notice; Declaration of Rebeka Rodriguez filed concurrently herewith]

Date: July 24, 2025
Time: 2:00 p.m.
Courtroom: 4A
Judge: Hon. Anthony J. Battaglia

**TABLE OF CONTENTS**


I. INTRODUCTION ... 1

II. ARGUMENT ... 1

A. Plaintiff Has Sufficiently Alleged Both Plaintiff's Article III Standing and Statutory Standing. ... 1

1. The FAC Has Sufficiently Alleged an Injury to Plaintiff's Privacy Interest, Which Harms Her Dignity ... 1

a. CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest. ... 2

b. The Alleged CIPA Violation Alleged in This Case Actually Harm or Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity. ... 2

2. The FAC Alleges that Plaintiff's Injury Is "Fairly Traceable" to Defendant's Conduct. ... 2

a. The Court Is Bound to Follow Both U.S. Supreme Court and Ninth Circuit Precedent Recognizing that a Self-Inflicted Injury Does Not Preclude Article III Standing. ... 2

b. *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive. ... 5

c. *Rodriguez v. Autotrader.com, Inc.* Is Unpersuasive ... 7

d. *Lightoller v. Jetblue Airways Corp.* Is Unpersuasive ... 7

3. An IP Address Constitutes a Consumer's Personal Information in California as Recognized by Multiple California Statutes, Which Supports a Reasonable Expectation of Privacy. ... 7

4. Case Law Supports Plaintiff's Position Regarding Her Standing. ... 10

5. *United States v. Forrester* Is Distinguishable. ... 12

6. Plaintiff's Declaration Reflects Plaintiff's Expectation of Privacy and Her Dual Motivation for Visiting the Defendant's Website. .......... 14

B. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code. .......... 16

1. The FAC Alleges that Third-Party Software Is Either a "Pen Register" or a "Trap and Trace Device". .......... 16

e. The PR/TT Beacons Qualify as a "Device or Process" Because They Constitute "Software that Identifies Consumers, Gathers Data, and Correlates that Data." .......... 16

f. The IP Addresses Collected by the PR/TT Beacons Qualify as "Addressing Information." .......... 19

g. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted." .......... 20

h. The Case Law Supporting Plaintiff's Position Is Both Comprehensive and Persuasive. .......... 21

2. The FAC Alleges Non-Consent. .......... 22

3. The FAC Plausibly Alleges Both Defendant's Liability as a Principal and Under an Aiding and Abetting Theory. .......... 23

4. Plaintiff Need Not Plead a Prima Facie Claim or Satisfy a Heightened Pleading Standard to Withstand the Instant Motion. .......... 25

C. The Court Should Reject Defendant's Attempt to Smear Plaintiff and Her Counsel. .......... 25

**CERTIFICATE OF SERVICE** .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarez v. Hill*,
518 F.3d 1152 (9th Cir. 2008) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................25

*Backer ex rel. Freedman v. Shah*,
788 F.3d 341 (2d Cir. 2015) ....................5

*Barker v. Riverside County Office of Education*,
584 F.3d 821 (9th Cir. 2009) ....................18

*Bayer v. Neiman Marcus Group, Inc.*,
861 F.3d 853 (9th Cir. 2017) ....................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................25

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ....................25

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.)....................5, 6, 7

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 4195768 (C.D. Cal. May 18, 2023)....................5, 6, 7

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....................22

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................5

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) ....................3

*Clark v. McDonald's Corp.*,
213 F.R.D. 198 (D.N.J. 2003)....................15

*Commonwealth v. Biden*,
57 F.4th 545 (6th Cir. 2023) ....................................................................4

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246, (C.D. Cal. Apr. 3, 2025) ..........................................1, 10, 21

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
91 F.4th 342 (5th Cir. 2024) ....................................................................4

*Cordes v. v. Boulder Brands USA, Inc.*,
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.) ......................15, 16

*D'Angelo v. Penny Opco, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) (Bashant, J.)...............................11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)..................................................24, 25

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ...................................................................12

*Federal Election Comm'n v. Cruz*,
596 U.S. 289 (2022).......................................................................3, 4, 15

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) (Sabraw, C.J.) ...............................7

*Geiger v. Charter Comms., Inc.*,
2019 WL 4284502 (C.D. Cal. Jan. 23, 2019) (Gee, J.) .....................................10

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024)................................................24

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...................................................*passim*

*Griffin v. Department of Labor Federal Credit Union*,
912 F.3d 649 (4th Cir. 2019) ......................................................................4

*Harty v. Simon Property Group, L.P.*,
428 Fed. Appx. 69 (2d Cir. 2011)...............................................................15

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982).......................................................................3, 4

*Heiting v. FKA Distributing Co. LLC*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) (Vera, J.) ................................1, 10

*Howard v. Senkowski*,
986 F.2d 24 (2d Cir. 1993) ........................................................................15

*Ibarra v. Pharmagenics LLC*,
660 F. Supp. 3d 914 (C.D. Cal. 2023) (Carney, J.) ..........................................15

*In re Betterhelp, Inc. Data Disclosure Cases*,
2024 WL 3416511 (N.D. Cal. July 15, 2024) ..................................................10

*In re Certified Question of Law*,
858 F.3d 591 (FISCR 2016) ..........................................................................13

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..................................................................2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ...........*passim*

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.)............................5, 6, 23

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)..............................................................25

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)..................................................................8

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)............................................................18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................19, 20

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)..............................................................19

*Jankey v. Los Burritos, Inc.*,
2005 WL 5517233 (C.D. Cal. Oct. 4, 2005) ......................................................15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022).................................................22, 23

*Kentucky v. Yellen*,
54 F.4th 325 (6th Cir. 2022) ....................................................................4

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ....................................................................3

*Laufer v. Dove Hess Holdings, LLC*,
2020 WL 7974268 (N.D.N.Y. Nov. 18, 2020) ..................................................15

*Laufer v. Naranda Hotels, LLC*,
60 F.4th 156 (4th Cir. 2023) ....................................................................4

*Legacy Health Sys. v. Hathi*,
2024 WL 2843034 (9th Cir. Cir. June 5, 2024) ..................................................4

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) ..........................................*passim*

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.) .....................................7

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ..........................................................25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................16

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ......................................*passim*

*Molski v. Price*,
224 F.R.D. 479 (C.D. Cal. 2004) (Cooper, J.) ..................................................15

*Montantes v. Inventure Foods*,
2014 WL 3305578 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) .............................25

*Moody v. C2 Educ. Systems Inc.*,
742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (Klausner, J.) .....................*passim*

*Oh v. Fresh Bellies, Inc.*,
2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) (Gutierrez, J.) ............................16

*Osgood v. Main Streat Marketing, LLC*,
2017 WL 131829 (S.D. Cal. Jan. 13, 2017) .....................................................11

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ....................................................................1, 2

*Prescott v. Bayer Healthcare LLC*,
2020 WL 4430958 (N.D. Cal. July 31, 2020) ....................................................9

*Reyes v. Just Born, Inc.*,
729 F. Supp. 3d 971 (C.D. Cal. 2024) (Vera, J.) ..............................................16

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) (Klausner, J.) ..............................1, 21, 22

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) (Klausner, J.)...............................7

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) (Klausner, J.) .................................7

*Rojas v. City of Ocala, Fl.*,
40 F.4th 1347 (11th Cir. 2022) .........................................................................4

*Shah v. Capitol One Financial Corp.*,
- F. Supp. 3d -, 2025 WL 714252 (N.D. Cal. Mar. 3, 2025) (citing cases)........10

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024).......................................................*passim*

*Shaver v. Independent Stave Co.*,
350 F.3d 716 (8th Cir. 2003) ............................................................................4

*Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*,
121 F.4th 1374 (10th Cir. 2024) .......................................................................4

*Smith v. Maryland*,
442 U.S. 735 (1979)..................................................................................13, 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................11

*Stenson Tamaddon, LLC v. United States Internal Revenue Service*,
742 F. Supp. 3d 966 (D. Ariz. 2024) ..................................................................4

*Taylor v. Salvation Army Nat'l Corp.*,
110 F.4th 1017 (7th Cir. 2024) .........................................................................4

*Tourgeman v. Collins Financial Servs., Inc.*,
755 F.3d 1109 (9th Cir. 2014) ....................................................................3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...........................................................................5, 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) ............................................12, 13, 14, 19

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ...................................................*passim*

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024).................................................9

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025)..............................1, 18, 21

**California Cases**

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993) ..............................................2, 4, 11

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ..............................................................................7

*Ion Equipment Corp. v. Nelson*,
110 Cal. App. 3d 868 (1980) ............................................................11

*King v. U.S. Bank National Ass'n*,
53 Cal. App. 5th 675 (2020), *rev. denied*, No. S264308 (Cal. Nov. 10, 2020) ..........................................................................................24

*Kleffman v. Vonage Holdings Corp.*,
49 Cal. 4th 334 (2010) .........................................................................8

*Ribas v. Clark*,
38 Cal.3d 355 (1985) .................................................................6, 12, 23

*Schroder v. Auto Driveway Co.*,
11 Cal. 3d 908 (1974) ........................................................................24

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ..................................................12, 13, 14

**U.S. Constitution**


Article III....................................................................................................*passim*

First Amendment..............................................................................................4


**Federal Statutes**


Americans with Disabilities Act of 1990, 42 U.S.C.
§ 12181 *et seq.* ....................................................................................4, 15
Title III of the Americans with Disabilities Act ..............................................15

Electronic Communications Privacy Act of 1986
§ 101, Pub. L. No. 99–508, 100 Stat 1848 (1986)................................13, 14, 21

Fair Credit Reporting Act ..............................................................................11

Pen Register Act........................................................................................14, 21

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ..........................................................13, 14, 18

USA Patriot Act of 2001, Pub. L. No. 107–56
§ 216, 115 Stat. 272 (2001).......................................................................14, 21


**California Statutes**


Civil Code
§ 1798.100 *et seq.* ...........................................................................................8
§ 1798.100(a) ....................................................................................................9
§ 1798.100(c) ....................................................................................................9
§ 1798.105(a) ....................................................................................................9
§ 1798.120(a) ....................................................................................................9
§ 1798.140..........................................................................................................8
§ 1798.140(v)(1)(A)...........................................................................................8
§ 1798.175..........................................................................................................9
Consumer Privacy Act of 2018...................................................................*passim*
Consumers Legal Remedies Act.........................................................................9

Penal Code
§ 31 .......... 24
§ 630 .......... 20, 23
§ 630 *et seq.* .......... 2
§ 631 .......... 6, 18
§ 631(a) .......... 6, 22, 23
§ 637.2 .......... 10, 11
§ 637.2(a) .......... 11
§ 637.2(c) .......... 11
§ 638.50 .......... 19, 20, 21, 22
§ 638.50(b) .......... *passim*
§ 638.50(c) .......... *passim*
§ 638.51 .......... *passim*
§ 638.51(b)(1) .......... 22
§ 638.52 .......... 17, 20, 21
§ 1546 *et seq.* .......... 8
§ 1546(d) .......... 8
§ 1546(h) .......... 8
§ 1546.1(a)(1) .......... 8
§ 1546.1(b) .......... 8
§ 1546.4(a) .......... 8
California Invasion of Privacy Act .......... *passim*
California Electronic Communications Privacy Act .......... 8, 12

**Federal Rules**

Rules of Civil Procedure
Rule 8 .......... 25
Rule 9(b) .......... 25
Rule 12(b)(6) .......... 25

**Other Authorities**

Assembly Committee on Public Safety Bill Analysis of June 21, 2010 for Senate Bill No. 1428 (2009-2010 Regular Session) .......... 16

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5 .......... 3
n.61 .......... 3
n.70 .......... 3, 5
n.73 .......... 3

First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55 (S.D. Cal.)............................17

*IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/; *see* http://web.archive.org/web/20240329095134/www.accudata.com/blog/ip-targeting/ (last visited Feb. 19, 2024)..............................................................18

Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961 (2018).....................14

S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996). ................................13, 14

S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968) .......................................................14

Senate Committee on Public Safety Bill Analysis of Apr. 12, 2010 for Senate Bill No. 1428 (2009-2010 Regular Session)..........................................16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Although Defendant's Motion to Dismiss to the First Amended Complaint ("FAC") contends that individuals lack a reasonable expectation of privacy in the IP addresses of their respective computer devices used to communicate with websites, Defendant conveniently ignores that there are at least nine different federal district court decisions that have comprehensively explained that tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the California Penal Code. *See, e.g.*, *Heiting v. FKA Distributing Co. LLC*, No. 2:24-cv-07314-HDV-AGR, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) (Vera, J.); Pl.'s RJN Ex. 4; *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6-*7 (C.D. Cal. Apr. 3, 2025); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-*7 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929-30 (C.D. Cal. 2025) (Klausner, J.) ("*Autotrader.com I*"); *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3-*5 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024); *Moody v. C2 Educ. Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (Klausner, J.); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

## II. ARGUMENT

### A. Plaintiff Has Sufficiently Alleged Both Plaintiff's Article III Standing and Statutory Standing.

Although Defendant challenges Plaintiff's Article III standing and statutory standing, Defendant's analysis is without merit.

#### 1. The FAC Has Sufficiently Alleged an Injury to Plaintiff's Privacy Interest, Which Harms Her Dignity.

The Ninth Circuit has "adopted a two-step approach to determine whether the violation of a statute causes a concrete injury." *Patel v. Facebook, Inc.*, 932 F.3d 1264,

1270 (9th Cir. 2019). Such inquiry asks "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* at 1270-71.

**a. CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest.**

The Ninth Circuit has held that claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*., protect concrete, substantive privacy interests, which is sufficient to confer standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*In re Facebook*").

**b. The Alleged CIPA Violation Alleged in This Case Actually Harm or Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity.**

The violation of section 638.51 of the Penal Code alleged in the FAC, if proven, actually harms or present a material risk of harm to Plaintiff's privacy interest and dignity. Plaintiff's dignitary interest is intended to be protected by the CIPA statutes at issue here. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any invasion of privacy involves an affront to human dignity***") (emphasis added).

"To say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious enough to warrant the attention of the federal courts is to disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019); *see In re Facebook*, 956 F.3d at 598.

**2. The FAC Alleges that Plaintiff's Injury Is "Fairly Traceable" to Defendant's Conduct.**

**a. The Court Is Bound to Follow Both U.S. Supreme Court and Ninth Circuit Precedent Recognizing that a Self-Inflicted Injury Does Not Preclude Article III Standing.**

Although Defendant argues that Plaintiff, a "tester," cannot have standing to sue because she suffered a self-inflicted injury, (Def.'s Mem. at 6:14-12:14), a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing. It is clear, however, that no rigid lines are drawn on this basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper"). That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* § 3531.5 & n.70. "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Notably, such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61. *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See Federal Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs). Also, the Ninth Circuit has repeatedly cited *Havens*. *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *id.* at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*"); *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014). The Court must follow both *Langer* and *CREEC*. *Langer* and *CREEC* should not be narrowly construed as applicable only to cases alleging violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. because both ADA cases and CIPA cases both implicate the dignitary harm to individuals.[1]

The Court is also bound to follow *Federal Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022). Although the federal Government argued that Senator Cruz and other plaintiffs lacked "standing because their injuries were 'self-inflicted,'"[2] *id.* at 296, and asked the Supreme Court "to recognize an exception to traceability for injuries that a party purposely incurs," *id.*, the Supreme Court unequivocally rejected such challenge:

> "We have never recognized a rule of this kind under Article III. To the contrary, ***we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred***."

*Id.* at 297 (emphasis added) (citing *Havens Realty Corp.*, 455 U.S. at 374). Numerous federal circuit courts including the Ninth Circuit, and district courts nationwide, have followed *Cruz* for such proposition. *Legacy Health Sys. v. Hathi*, 2024 WL 2843034, at *1 (9th Cir. Cir. June 5, 2024) (citing *Cruz*).[3]

---

[1] *Friddle*, 16 Cal. App. 4th at 1660-61 ("***Any invasion of privacy involves an affront to human dignity***") (emphasis added); *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017) (recognizing "the dignitary interest at stake when an action alleges a violation of a statute intended to safeguard civil rights"); *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) ("Dignitary harms or 'stigmatic injur[ies],' while not tangible, may be sufficiently concrete to constitute injury in fact, and therefore may be constitutionally protected by statute.") (internal citation omitted); *id.* at 654 (explaining that the plaintiff therein "has alleged just such a dignitary harm," that "dignitary harms are readily inferred by allegations of unequal treatment," and "Congress, in enacting the ADA, intended in part to protect people with disabilities against stigmatic injury."); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (citing a "dignitary interest" that discrimination statutes are designed to protect regardless of any economic harm to the plaintiffs).

[2] Senator Cruz and his campaign both stipulated that their "sole and exclusive motivation" for violating the campaign-finance restriction in federal law was to create a factual basis for challenging such restriction under the First Amendment. 596 U.S. at 296.

[3] *See, e.g.*, *Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*, 121 F.4th 1374, 1378 (10th Cir. 2024); *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024); *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 351 (5th Cir. 2024); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 170-171 (4th Cir. 2023); *Commonwealth v. Biden*, 57 F.4th 545, 555-56 (6th Cir. 2023); *Kentucky v. Yellen*, 54 F.4th 325, 345-46 (6th Cir. 2022); *Rojas v. City of Ocala, Fl.*, 40 F.4th 1347, 1351 (11th Cir. 2022); *Stenson Tamaddon, LLC v. United States Internal Revenue Service*, 742 F. Supp. 3d 966, 982-83 (D. Ariz. 2024).

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions." Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). Rather, the FAC makes it clear that Defendant's and its spyware providers' unlawful conduct regarding Plaintiff's claim for relief contributed to causing Plaintiff's intangible injury either solely or almost entirely on their own.

Finally, Defendant ignores Ninth Circuit precedent regarding the issue of consent. *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added); *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent.") (emphasis in original). Such omission speaks volumes.

**b. *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive.**

Defendant's reliance upon *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.) ("*Sterling Jewelers I*"), is misplaced because the court therein subsequently abandoned reliance upon the defendant's facial challenge after the plaintiff therein moved for reconsideration and relied upon *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118-19 (9th Cir. 2020), which held that a statutory violation of CIPA would satisfy the concrete injury requirement for Article III standing. (Doc. 46 at 9:1-3 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) The court instead relied solely upon the defendant's factual challenge in a subsequent order denying such motion for reconsideration that was limited to its unique facts. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023) ("*Sterling Jewelers II*") ("the Court need not decide whether *Campbell* states the absolute rule advanced by Plaintiff or whether such a rule survives *TransUnion*") ("Because Plaintiff has not shown that dismissal based on Zale's factual challenge constituted manifest error of law or fact, it is immaterial whether Zale's facial challenge presented an independent basis for dismissal."). In stark contrast, here, Defendant has made no factual challenge by relying on evidence such as declarations to support the instant Motion. Thus, Defendant's implicit argument that *Sterling Jewelers*

*I* correctly decided the ***facial*** challenge to standing is misleading because that court was unwilling to stand by such decision in *Sterling Jewelers II*.

Notably, *Sterling Jewelers I* relied upon an apparent pleading deficiency by stating that it relied upon the lack of any "allegation" that the plaintiff therein reasonably expected that her chat communication was being recorded, 2023 WL 2996686, at *4, but failed to grant leave to amend (as it should have).

Moreover, the relevant inquiry therein was not whether the plaintiff had a reasonable expectation that her chat communication would not be "recorded" (for example, by the website operator), but rather whether the plaintiff had a reasonable expectation that surreptitious eavesdropping of such chat communication by an undisclosed third party chat provider would take place in violation of the second clause of section 631(a) of the California Penal Code. Notably, ***such clause does not even mention recording at all***. As the California Supreme Court held in *Ribas v. Clark*, 38 Cal.3d 355 (1985), "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Id.* at 359; *id.* at 360-61 ("While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device."). Thus, regardless of whether a person expects a telephonic or Internet-based conversation to be recorded, that does not preclude an actionable claim under the second clause of section 631(a). Thus, by stating that "it appears that [Plaintiff] fully expected her chat would be recorded so that she could file this action," 2023 WL 2996686, at *4, *Sterling Jewelers I* was entirely focused on an irrelevant issue.

Finally, *Sterling Jewelers I* had no occasion to address or distinguish *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added); *In re Google*, 2013 WL 5423918, at *12 ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent.") (emphasis in original).

**c. *Rodriguez v. Autotrader.com, Inc.* Is Unpersuasive.**

Defendant's reliance on both *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) (Klausner, J.) ("*Autotrader II*") and *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (Klausner, J.) ("*Autotrader III*"), is misplaced. *Autotrader II* and *Autotrader III* both relied heavily upon *Sterling Jewelers I*, which is both distinguishable and unpersuasive for the reasons stated above. In particular, neither *Autotrader II* nor *Autotrader III* addressed *Staves*, which held that "foreseeability of monitoring is sufficient to infer consent". 383 F.3d at 981.

And, as set forth below, Plaintiff has a reasonable expectation of privacy in the IP address of her devices, which is currently statutorily protected in California.

**d. *Lightoller v. Jetblue Airways Corp.* Is Unpersuasive.**

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.), is unpersuasive. Although *Lightoller* cited *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), in support, *id.* at *3, the Court has held that "*TransUnion* does not undermine the reasoning in [prior cases finding standing in CIPA cases]." *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) (Sabraw, C.J.).

And, although *Lightoller* cited *Sterling Jewelers I*, *Lightoller* did not cite to *Sterling Jewelers II*, the latter of which, as mentioned above, effectively disavowed relying upon its prior facial standing analysis.

**3. An IP Address Constitutes a Consumer's Personal Information in California as Recognized by Multiple California Statutes, Which Supports a Reasonable Expectation of Privacy.**

Although Defendant has challenged Plaintiff's Article III constitutional standing and statutory standing by arguing that Plaintiff has no reasonable expectation of privacy[4] in the

[4] It is well established that a reasonable expectation of privacy is a concept derived from the common law. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994) (referring to "the common law's insistence on objectively reasonable expectations of privacy"). It is not a required element of the ***statutory*** cause of action at issue herein for violation of section 638.51.

collection of her device's IP address,[5] Defendant conveniently omits to mention that over the past decade, California law has expressly recognized a legally protected privacy interest in IP addresses. For example, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception. (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

More recently, in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)). The CCPA's recognition supports a reasonable expectation of privacy in such personal information. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140).

[5] "An IP address consists of 'four sets of numbers separated by periods, such as '12.34.56.78.' 'IP addresses function much like Social Security numbers or telephone numbers: each IP address is unique and corresponds to a specific entity connected to the Internet.'" *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 337 (2010) (internal citations omitted).

In addition, the CCPA,[6] which provides consumers with the right to know when a business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)), also provides:

> "A business' collection, use, ***retention***, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the personal information was collected, and not further processed in a manner that is incompatible with those purposes."

(Cal. Civ. Code § 1798.100(c)) (emphasis added). And, the CCPA provides a consumer with "the right to request that a business ***delete*** any personal information about the consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)). If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot ***retain*** personal information like a consumer's IP address in perpetuity if: (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention. Plaintiff has opted-out of such retention here as demonstrated by Plaintiff's pre-filing demand letter dated September 23, 2024, (FAC ¶¶ 163, 169), which was sent before the initial Complaint was filed. Further, any confusion about Plaintiff's basis was dispelled when Plaintiff actually filed suit. *Cf. Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (initial complaint's allegations provided CLRA notice for purposes of amended complaint); *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) (same). Defendant is acting as though it can ignore Plaintiff's opt-out with

[6] Notably, the CCPA does not preempt CIPA. *Mirmalek*, 2024 WL 5102709, at *5 (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control").

impunity.[7]

#### 4. Case Law Supports Plaintiff's Position Regarding Her Standing.

The Court can reasonably infer from the FAC's allegations that by capturing Plaintiff's IP address and other record information, Defendant and its third party spyware developers de-anonymized Plaintiff and digitally fingerprinted Plaintiff and other visitors to the website at: https://www.culligan.com/ (the "Website") before any consent could be obtained. (FAC ¶¶ 52-163.)

Most recently, in both *Heiting, supra,* and *Conohan, supra,* the federal courts in those decisions rejected challenges to the Article III standing of plaintiffs alleging the violation of section 638.51 of the Penal Code by running software code on a website that sent user details such as device and browser information, geographic information, referral tracking, and URL tracking to TikTok. *Heiting*, 2025 WL 1430663, at *2; *Conohan*, 2025 WL 1111246, at *5-*6. *Conohan* is directly on point. The allegations in the FAC regarding the invasion of privacy actionable injury and standing from the collection of Plaintiff's information are indistinguishable here. (FAC ¶¶ 52-164.)

In *Mirmalek*, *supra*, the federal court rejected a challenge to the statutory standing of a plaintiff alleging the violation of section 638.51 by disclosing the website user's IP address to third parties without the plaintiff's consent and because such IP address is then used for marketing and advertising purposes including website analytics. 2024 WL 5102709, at *4.

In *Moody*, *supra*, the federal district court held:

> "***Here, there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing***. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every

[7] Significantly, the Court can consider whether the FAC's allegations state a claim under the CCPA itself regardless of whether the CCPA is pled as a cause of action. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need to identify the statutory or constitutional source of the claim in order to survive a motion to dismiss"), *cited in Geiger v. Charter Comms., Inc.*, 2019 WL 4284502, at *2 (C.D. Cal. Jan. 23, 2019) (Gee, J.) ("[P]laintiffs need not plead legal theories, only sufficient facts to support potential claims for relief."). Multiple federal courts have construed the CCPA as not limited to data breach fact patterns involving hackers. *Shah v. Capitol One Financial Corp.*, - F. Supp. 3d -, 2025 WL 714252, at *8 (N.D. Cal. Mar. 3, 2025) (citing cases); *In re Betterhelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4-*5 (N.D. Cal. July 15, 2024).

> visitor of the Website; and (3) Plaintiff allegedly visited the Website on February 28, 2024. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Thus, Defendant's argument fails."

*Moody*, 742 F. Supp. 3d at 1078 (emphasis added).

The Court must follow California Court of Appeal decisions (unless it believes the California Supreme Court would rule otherwise), which squarely held that ***any*** invasion of privacy is an affront to dignity. *Friddle*, 16 Cal. App. 4th at 1660-61 ("Any invasion of privacy involves an affront to human dignity"). Indeed, the statutory damages remedy in Penal Code § 637.2(a) is available regardless of actual damages. (Penal Code § 637.2(c)) ("It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***.") (emphasis added); *Friddle*, 16 Cal. App. 4th at 1661 (rejecting argument "that section 637.2 does not kick in until actual damages begin to be incurred") ("The right to recover this statutory minimum accrued at the moment the [CIPA] was violated."); *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (1980) ("actual damages are not a necessary prerequisite to an action pursuant to section 637.2"). Thus, the Legislature intended to deter ***any*** CIPA violation by omitting an actual damages requirement for CIPA violations. *D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793, at *4 (S.D. Cal. Oct. 24, 2023) (Bashant, J.) ("The California legislature has created statutory damages for each violation of CIPA, with 'no separate showing of injury aside from a violation of the privacy rights protected by CIPA' required.").

"[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo*[*, Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation 'involves much greater concrete and particularized harm ... a violation of privacy rights', and therefore, a violation of CIPA is a 'violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact.'" *Osgood v. Main Streat Marketing, LLC*, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017).

Indeed, in *Ribas v. Clark*, *supra*, the California Supreme Court noted in the context

of secret monitoring of telephonic communications that "the right to control the nature and extent of the firsthand dissemination of [a speaker's] statements" "denies the speaker an important aspect of privacy of communication". *Ribas*, 38 Cal. 3d at 361 (citation omitted), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021). Notably, longstanding Ninth Circuit precedent has recognized that historical privacy rights " 'encompass[] the individual's control of information concerning his or her person' ... the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Denying Plaintiff's right to control the dissemination of Plaintiff's IP address ***and the other user data linked to her IP address*** captured by third party spyware vendors for marketing purposes is highly offensive and constitutes an invasion of privacy.

**5. *United States v. Forrester* Is Distinguishable.**

Defendant's reliance upon *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), is misplaced as it is distinguishable for many reasons.

First, *Forrester* had no occasion to consider whether an Internet user has a reasonable expectation of privacy as to the user's IP addresses on the user's devices.

Second, *Forrester* was decided in 2008, well before the CECPA and CCPA were enacted into law.

Third, *Forrester* treated the "IP addresses of websites visited," as "unprotected addressing information," 512 F.3d at 510, because the Ninth Circuit viewed the "IP addresses of websites visited," as irrelevant to "know[ing] the particular pages on the websites the person viewed." *Id.* at 510. If the government could "know the particular pages on the websites the person viewed" by learning the "IP addresses of websites visited," then the outcome in *Forrester* may have been different. *Id.* at 510 n.6.

Fourth, *Forrester* was decided more than 15 years ago, before the identity resolution industry existed and before tracking software embedded into websites as "cookies" to track the specific webpages visited by Internet users became technically feasible amongst websites. Given that it is currently technically feasible to track the specific webpages

visited by Internet users via tracking software code embedded into websites by learning the users' IP addresses on their computerized devices, *Forrester* is predicated upon outdated assumptions about computer technology, which is precisely why the Legislature enacted the CCPA and indicated that users' IP address constitutes personal information.

Finally, *Forrester* relied heavily upon *Smith v. Maryland*, 442 U.S. 735 (1979). *Forrester*, 512 F.3d at 509-10. But, *Smith* itself is distinguishable. *Smith* narrowly defined a "pen register" in relevant part as "a ***mechanical device*** that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released." 442 U.S. at 736 n.1 (emphasis added). As a law review article points out, however, *Smith* relied upon a definition of a "pen register" that was later significantly modified by the enactment of the Electronic Communications Privacy Act of 1986 ("ECPA"), § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986), which amended Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ("Wiretap Act").[8] S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996). Significantly, such 1986 enactment "omitted the Supreme Court's reference to the 'mechanical' nature of the pen register device, and it did not limit the pen register to something that acquired information about a telephone…." *Id.* The "final version of the ECPA omitted references to 'wire communications' that likely would have limited the use of pen registers to the interception of the numbers dialed in traditional telephone conversations." *Id.* "The ECPA's pen register could capture 'other impulses' besides electronic impulses and did not necessarily produce a paper record." *Id.* "The broadly worded ECPA pen register definition was clearly designed to handle the electronic communications that the ECPA brought under legislative protection." *Id.* Significantly, the ECPA "***omitt[ed] language limiting the types***

---

[8] "Prior to 1986, there was no federal statute that governed the use of pen registers and trap-and-trace devices.…Title III [of the Wiretap Act] was silent … as to the use of pen registers or other devices that could intercept non-content information.…In *Smith*…, … the Court held that pen registers…could be installed and operated without the need for a court order. In 1986, Congress changed that regime with the enactment of the [ECPA]. That statute added a provision authorizing the government to install and use pen registers and trap-and-trace devices, but only upon obtaining a court order." *In re Certified Question of Law*, 858 F.3d 591, 600-01 (FISCR 2016).

***of information a pen register could acquire***." *Id.* (emphasis added). Indeed, even at the time that such law review article was published in 1996, courts had already "regarded as pen registers devices that incorporate computer hardware and software." *Id.* at 987 & n.183 (citing cases). The subsequent enactment of the federal USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56, § 216, 115 Stat. 272 (2001), further modified the "pen register" definition to cover software processes that collect information.[9]

In other words, *Smith* was decided before any federal statute governed the use of pen registers and trap-and-trace devices and several decades before the Patriot Act was enacted into federal law on October 26, 2001. Notably, *Forrester* considered the "pre-October 2001 version of the pen register statute" because the surveillance at issue took place in May-July 2001. *Forrester*, 512 F.3d at 512 & n.7. Thus, *Forrester* did not consider the effect of the Patriot Act's amendment to the "pen register" definition on its decision. Nor did *Forrester* recognize that the version of the "pen register" definition in the ECPA applicable to that appeal had significantly changed from the version of the definition considered decades earlier by the Supreme Court in *Smith* before any federal statute governed the use of pen registers and trap-and-trace devices.

**6. Plaintiff's Declaration Reflects Plaintiff's Expectation of Privacy and Her Dual Motivation for Visiting the Defendant's Website.**

Plaintiff reasonably expected to maintain her privacy interest in both her IP address and her other personal data when visiting Defendant's Website. (Declaration of Rebeka Rodriguez of 5/19/25 ("Rodriguez Decl.") ¶¶ 3-7.) Not only does Plaintiff's Declaration confirm her expectation of privacy, which is plausible[10] especially given Ninth Circuit

---

[9] The reason why the federal Pen Register Act and CIPA's pen register and trap and trace device provisions are so similar is because the Pen Register Act sets a "floor," *i.e.*, a minimum standard that states can exceed with more stricter privacy laws, but they cannot enact "less restrictive legislation" as confirmed by the Wiretap Act's legislative history. Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) (citing S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)). Thus, because the Patriot Act amended the "pen register" and "trap and trace device" definitions to cover software processes that collect information, California could not enact "less restrictive legislation" on this same topic.

[10] For purposes of evaluating Plaintiff's standing, federal courts "accept as valid the merits of [the plaintiff's] legal claims." *Cruz*, 596 U.S. at 298. The FAC denies that Plaintiff

Continued on the next page

precedent, *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("foreseeability of monitoring is insufficient to infer consent"), it also reflects that Plaintiff had a dual motivation for visiting the Website, which advertises its bottled water delivery service, water filtration systems, water softening systems, and other water-related products and services. (Rodriguez Decl. ¶ 4.) Notably, the dual motivation concept has long been recognized by federal courts for purposes of analyzing a disabled individual's constitutional standing under Article III of the U.S. Constitution to sue a public accommodation's owner or operator under Title III of the ADA.[11] The fact that this case does not allege a violation of the ADA is a distinction without a difference.

The mere fact that Plaintiff is a "tester" is insignificant because federal courts have recognized that "[t]here is nothing facially implausible about [a consumer's] dual motives—consumers are allowed to have multiple reasons behind their purchasing decisions." *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023) (Carney, J.) (citing *Cordes v. v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.); *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir. 1993) ("A person may act for more than one reason.").[12]

---

consented to be tracked by spyware. (FAC ¶¶ 2, 4, 60-61, 65, 158, 162, 185, 188.) Because the issue of consent is a merits issue, the Court must accept as valid Plaintiff's lack of consent.

[11] *See, e.g.*, *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2d Cir. 2011) (holding that allegation that disabled plaintiff "plans to return [to shopping mall] both as a patron ... and as a tester 'to determine whether the property has been made ADA compliant' " was sufficient to establish constitutional standing including to recover injunctive relief); *Laufer v. Dove Hess Holdings, LLC*, 2020 WL 7974268, at *10 (N.D.N.Y. Nov. 18, 2020) ("District Courts in this Circuit have readily found standing where plaintiffs credibly allege a "dual motivation" for their past and future visits to Defendant's public accommodation, i.e., a desire to both test the property for ADA compliance and avail themselves of the goods and services provided.") (citing cases); *Jankey v. Los Burritos, Inc.*, 2005 WL 5517233, at *3 n.2 (C.D. Cal. Oct. 4, 2005) (citing *Molski v. Price*, 224 F.R.D. 479, 484 (C.D. Cal. 2004) (Cooper, J.)); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 227-28 (D.N.J. 2003).

[12] Indeed, in *Cordes*, a federal court noted, in finding an injury in fact for Article III standing purposes, that "while Plaintiff's allegation that he purchased the Product in part to determine whether it was lawfully filled suggests that he may have *suspected* that the package contained a significant amount of slack-fill, it does not demonstrate that he *knew for certain* about the amount of slack-fill before he purchased and opened the product." *Cordes*, 2018 WL 6714323, at *2 (emphasis in original), *cited in Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 980 (C.D. Cal. 2024) (Vera, J.) (finding that the reasoning in *Cordes* "applies just as forcefully to Plaintiff's burden on justifiable reliance"). Notably, a federal

Continued on the next page

Finally, this Court can revisit Plaintiff's standing at a subsequent stage and evaluate the parties' evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**B. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code.**

**1. The FAC Alleges that Third-Party Software Is Either a "Pen Register" or a "Trap and Trace Device".**

The FAC adequately alleges that third-party software deployed on the Website is either a "pen register" or a "trap and trace device" because it is either: (i) a "device or process" that "records or decodes" "routing, addressing, or signaling information" "transmitted by an instrument or facility from which a[n] … electronic communication is transmitted, but not the contents of a communication," within the meaning of section 638.50(b); or (ii) a "device or process" that "captures" "the incoming electronic … impulses that identify the" "routing, addressing, or signaling information" "reasonably likely to identify the source of a[n] … electronic communication,"[13] within the meaning of section 638.50(c), by collecting the IP addresses of user devices and other identifying information used to analyze how Plaintiff and other Website users interaction with the Website. (FAC ¶¶ 63, 67-149, 154-156.)

**e. The PR/TT Beacons Qualify as a "Device or Process" Because They Constitute "Software that Identifies Consumers, Gathers Data, and Correlates that Data."**

In *Greenley*, *supra,* the federal court explained:

> "***Today, pen registers take the form of software***. As a result, private companies and persons have the ability to hack into a person's telephone and gather the same information as law enforcement. Perhaps for this reason, ***the California legislature does not limit its prohibition on installing pen registers to law enforcement***. *Compare* Cal. Penal Code § 638.51 ("[A] *person* may not install or use a pen register ..." (emphasis added)), *with id.* § 638.52 ("A *peace officer* may make an application

court recently held in an action alleging unlawful slack-fill in food packaging that allegations of a dual motivation tester plaintiff were "enough to give to a plausible inference that Plaintiff relied on the slack-fill in making her purchase." *Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *8 (C.D. Cal. Oct. 15, 2024) (Gutierrez, J.).

[13] Defendant ignores that the Legislature's intent to broadly define the meaning of "electronic communication," which is a crucial term used within the definitions of "pen register" and "trap and trace device" in Penal Code § 638.50(b) & (c), is clear from relevant legislative history that Defendant has conveniently ignored. (Pl.'s RJN Ex. 1 at 2, 6, 7, 9; Pl.'s RJN Ex. 2 at 6.)

> to a magistrate for an order ... authorizing ... the installation and use of a pen register ..." (emphasis added))."

684 F. Supp. 3d at 1050 (first and second emphasis added). *Greenley* added:

> "Moreover, the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.' *See* Cal. Penal Code § [6]38.50(b). ***This indicates courts should focus less on the form of the data collector and more on the result***. Thus, the Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'*** (Am. Compl. ¶¶ 67, 74.) ***Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'***'"

*Id.* (emphasis added). Thus, as mentioned above, *Greenley*, in analyzing what constitutes a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code, stated:

> "A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***'"

*Greenley*, 684 F. Supp. 3d at 1050 (emphasis added). Indeed, in *Greenley*, the defendant's software developer kits ("SDKs") intended for use in third-party software applications for the defendant's corporate clients such as Airbnb, Disney, and Kroger allegedly collected the IP address of app users as well as other user data. Although *Greenley* does not expressly address the collection of IP addresses in addressing the allegations of the first amended complaint at issue therein, a review of the first amended complaint filed in *Greenley* clearly shows the existence of such allegation as follows:

> "This data collection includes all sorts of website information, as well as Plaintiffs' and Class Members' respective ***IP addresses***, browser and device information, user IDs, geolocation data, and other data, [and] are used by Defendant to 'fingerprint' individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties."

(First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55 (S.D. Cal.); Pl.'s RJN Ex. 3) (emphasis added). Thus, *Greenley*'s reference to software constituting a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code that "identifies consumers," "gathers data" and "correlates that data through unique 'fingerprinting,'" is intended to

refer to a ***combination*** of IP addresses ***and other user data*** in order to "fingerprint" individuals across the internet. Four other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data. *Lesh*, 2025 WL 563358, at *3 (quoting *Greenley*); *Zarif*, 2025 WL 486317, at *12 (quoting *Greenley*); *Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley* and *Shah*); *Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley*).

That is precisely what the FAC in the instant action alleges. (FAC ¶¶ 67-157.) The FAC's allegations allege that third party spyware on the Website engages in unique "fingerprinting" to de-anonymize visitors to the Website.[14] (FAC ¶¶ 67-157.) Thus, the FAC alleges that users are tracked while visiting the Website, which can include when a user views the page, page interactions, and, of course, the identification of Website visitors. There is nothing "cookie-cutter," (Def.'s Mem. at 1:9), about the allegations regarding the 35 distinct spyware operating on the Website. (FAC ¶¶ 63, 67-149.)

The Court can and should also infer from the FAC's allegations about the installation of tracking code on Plaintiff's Internet browser that the FAC's allegations allege that the Website's spyware can geolocate[15] users of the Website who are from California as reflected by such users' IP addresses.[16] (FAC ¶¶ 23, 109, 113, 156.) Thus, the FAC alleges substantial downstream consequences arising from Defendant's capturing of the IP address of Plaintiff's computerized device while visiting the Website.

[14] Although Defendant argues that the FAC's allegations about the numerous spyware detected on the Website are "untethered to Plaintiff's own experience," (Def.'s Mem. at 8:17-19; *see also id.* at 4:22-24), it is a reasonable inference to be drawn from the de-anonymization and "fingerprinting" of Website users that Plaintiff was similarly de-anonymized and digitally fingerprinted as to her use of the Website. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff").

[15] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act). *Greenley* involved, *inter alia*, the collection of geolocation data by website data collectors. 684 F. Supp. 3d at 1037.

[16] Knowing a user's geographical location "provide[s] a level of specificity previously unfound in marketing." *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/; *see* http://web.archive.org/web/20240329095134/www.accudata.com/blog/ip-targeting/ (last visited Feb. 19, 2024).

Thus, the PR/TT beacon alleged in the FAC qualifies as "device or process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code because it constitutes "software that identifies consumers, gathers, data, and correlates that data." *Greenley*, 684 F. Supp. 3d at 1050.

In addition, the PR/TT beacon is a "device" because "in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023).

**f. The IP Addresses Collected by the PR/TT Beacons Qualify as "Addressing Information."**

In *Mirmalek, supra*, the federal court stated:

> "As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' ' "

*Mirmalek*, 2024 WL 5102709, at *4 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *Forrester*, 512 F.3d at 510)); *see also Shah*, 754 F. Supp. 3d at 929 (holding that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Priv. Litig.*, 750 F.3d at 1108); *see also Lesh*, 2025 WL 563358, at *4 ("the IP addresses collected by the Trackers qualify as 'addressing information' under the statute [Penal Code § 638.50]"). In *Lesh*, the federal court noted, "An IP address contains information related to geographical location of a device's state, city, and zip code." *Id.*

The FAC alleges that spyware beacons on the Website collected the IP address of Plaintiff's device.[17] (FAC ¶¶ 44, 58, 70, 82, 95, 97, 109, 155-56, 183.) Thus, the collection of the IP address of Plaintiff's device constitutes "addressing" information within the

[17] The collection of the IP addresses of users' devices that visit the Website does not itself constitute the content of user communications. *See In re Zynga Privacy Litig.*, 750 F.3d at 1108 ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (quotation omitted).

meaning of section 638.50(b) and (c).

**g. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted."**

As *Lesh* recognized, "IP addresses are 'transmitted by an instrument or facility from which a wire or electronic communication is transmitted.'" *Lesh*, 2025 WL 563358, at *4 (quoting Penal Code § 638.50); *see also Shah*, 754 F. Supp. 3d at 928-29. As *Lesh* explained:

> "When a user first visits the Website, the browser sends an 'HTTP request' to CNN's server, which then responds with instructions that install the Trackers. Such Trackers prompt the browser to send the user's IP address. These facts adequately allege the transmission of an electronic communication."

*Lesh*, 2025 WL 563358, at *4. Notably, *Lesh* rejected construing section 638.50 as narrowly limited to only the capture of telephone information. *Id.* In referencing subdivision (b) of section 638.50, *Lesh* noted:

> "***The statutory text includes no limitation to information transmitted by telephone or over a phone line. Nor does such a narrow limitation comport with CIPA's purpose.*** CIPA was passed, in part, because 'the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties.' Cal. Penal Code § 630. Consistent with this legislative intent, the definition of pen register in CIPA encompasses a variety of 'electronic communications.'"

*Id.* (emphasis added). Although *Lesh* considered section 638.52, which referenced terms like "telephone number" and "telephone line," *Lesh* found that "this language is insufficient to support a reading of 'telephone' into the definition of 'pen register.'" *Id. Lesh* explained:

> "Section 638.52 lists requirements authorizing a warrant for a pen register on a telephone line but does not redefine 'pen register' in Section 638.50. Section 638.52 'merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line' but does not otherwise 'alter the statutory definition of a pen register stated in § 63[8].50(b)'. *Shah*, 2024 WL 4539577, at *4. The Court will not read the term 'telephone' into Section 638.50 just because the word is used in another section of the statute that bears little relevance here."

*Id.*; *Shah*, 754 F. Supp. 3d at 930 ("Section 638.52, however, merely lists requirements

relating to a particular type of pen register: one that is installed on a telephone line.”).[18] *Lesh* concluded, “In short, the plain text of Section 638.50 clearly does not limit the application of pen registers to telephones.” *Lesh*, 2025 WL 563358, at *5. *Lesh* is persuasive.

“When an individual internet user visits a web page, his or her browser sends a message called a ‘GET request’ to the web page’s server. The GET request serves two purposes: it first tells the website what information is being requested ***and then instructs the website to send the information back to the user***. The GET request also transmits a refer[r]er header containing the personally-identifiable URL information. Typically, this communication occurs only between the user’s web browser and the third-party website.” *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (emphasis added). Thus, when a user first visits the Website, the user’s browser sends an “HTTP request” or a “GET request” to Defendant’s Website server, which then responds with instructions that install the PR/TT beacons constituting spyware, which prompts the user’s browser to send the user’s IP address. The fact that the FAC alleges that the Website is functional shows that the Website transmitted an electronic communication back to Plaintiff’s computer device with instructions on how to load the Website’s webpages. “These facts adequately allege the transmission of an electronic communication.” *Lesh*, 2025 WL 563358, at *4.

**h. The Case Law Supporting Plaintiff’s Position Is Both Comprehensive and Persuasive.**

Notably, *Greenley*’s conclusion that tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51 has been cited with approval by five recent federal court decisions. *Conohan*, 2025 WL 1111246, at *6; *Lesh*, 2025 WL 563358, at *3; *Zarif*, 2025 WL 486317, at *12; *Autotrader.com I*, 762 F. Supp. 3d at 929; *Mirmalek*, 2024 WL 5102709, at *3; *Shah*, 754 F. Supp. 3d at 931 (“Based on the expansive statutory definition of a pen register, ‘tracking software could plausibly constitute a pen register under §§

[18] Indeed, if California’s Legislature enacted “less restrictive legislation” than the Patriot Act, then California’s legislation violated the federal floor established by the Pen Register Act (enacted via the ECPA), as amended by the Patriot Act.

638.50 and 638.51.'") (quoting *Moody*, 742 F. Supp. 3d at 1076 (citing *Greenley*, 684 F. Supp. 3d at 1050)). *Shah* explained, "Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." 754 F. Supp. 3d at 930 (citing cases).

**2. The FAC Alleges Non-Consent.**

Defendant has failed to satisfy its burden of proving consent as a matter of law.[19] First, Defendant's argument that its own consent counts so as to trigger the Section 638.51(b)(1) exception finds no support in the statutory text, and is "illogical." *Lesh*, 2025 WL 563358, at *5 (rejecting defendant's argument that consent to use Trackers was obtained from one party to communication, *i.e.*, itself as "self-serving").

Second, the FAC expressly alleges Plaintiff's lack of consent to Defendant's actions, (FAC ¶¶ 2, 4, 60-61, 65, 158, 162, 185, 188), which this Court is required to take as true for purposes of deciding the instant Motion. Notably, the FAC alleges:

> "Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy."

(FAC ¶ 65.) Notably, in *Autotrader.com I*, *supra*, the federal court rejected the defendant's consent argument with respect to the claim alleging the violation of section 638.51 by noting that:

> "Indeed, Plaintiff alleges that the software was installed immediately upon loading the Website before she had any opportunity to consent to Defendant's Privacy Policy."

*Autotrader.com I*, 762 F. Supp. 3d at 930. The Court should follow *Autotrader.com I*.

Notably, in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit interpreted section 631(a) of the California Penal Code as requiring "prior consent," and predicted that the California Supreme Court would interpret such statute in such manner. *Id.* at *2 ("Based on these statements by the California Supreme Court, we

---

[19] It is the defendant's burden to prove consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added). Although the Ninth Circuit in *Javier* was interpreting section 631(a), the supportive "statements" of the California Supreme Court cited by *Javier* included the emphasis that "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier*, *id.* at *2 (citing *Ribas*, 38 Cal. 3d at 359 (citing Cal. Penal Code § 630)).

"That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent." *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (emphasis in original); *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added). Notably, Defendant ignores *Staves*, which this Court is bound to follow.

If anything, the specific use of an Internet user's IP address for the user's computerized device implicitly agreed upon by the user is the disclosure of the device's IP address solely to communicate with the website visited by the Internet user. Any such limited and narrow consent to the use of the Internet user's IP address, however, is limited to communicating with the website that the user wants to visit. Users do not expect the IP address on their device to be collected by surreptitious tracking software code embedded into the websites that they visit with the goal of de-anonymizing such website visitors so that their website history can be tracked and monetized by those involved in the identity resolution industry. *Shah*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers.").

### 3. The FAC Plausibly Alleges Both Defendant's Liability as a Principal and Under an Aiding and Abetting Theory.

Contrary to Defendant's contention, the FAC plausibly alleges Defendant's knowledge and intent regarding the violation of section 638.51 against Plaintiff via the Website's PR/TT Spyware. (FAC ¶¶ 167-170.)

Under section 31 of the Penal Code, Defendant is a principal of the violation of section 638.51 of the Penal Code by directly committed the act constituting the offense. Alternatively, Defendant is a principal of such offense because it "aid[ed] and abet[ted] in its commission." Defendant aided in its commission by agreeing to allow the PR/TT Spyware makers' software to operate on its Website and, in fact, allowing such third-party software to operate on such Website. (FAC ¶ 166.) Such acts were essential to the commission of the violation of section 638.51. Defendant knew that the PR/TT Spyware makers would collect personal information when Defendant installed or allowed the installation of the relevant code on its Website. (FAC ¶¶ 167.) Defendant also knew that it would receive discounted or higher-quality analytics and other services derived from the data about consumers' online activities, including the option to target advertisements to customers that had merely browsed the Website. *Id.*

The PR/TT Spyware makers' software in the Website is designed for the purpose of de-anonymizing and tracking visitors of the Website. (FAC ¶ 168.) The software design is not a mistake. *Id.*; *see Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *11 (W.D. Wash. July 2, 2024) ("The SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities."). Defendant knew this before agreeing to install and allow such third party spyware software to exist and operate on its Website. (FAC ¶ 168.) "'[I]ntent,' in the law of torts, denotes not only those results the actor desires, but also those consequences which he [or she] knows are substantially certain to result from his [or her] conduct.'" *King v. U.S. Bank National Ass'n*, 53 Cal. App. 5th 675, 712 (2020), *rev. denied*, No. S264308 (Cal. Nov. 10, 2020) (quoting *Schroder v. Auto Driveway Co.*, 11 Cal. 3d 908, 922 (1974)).

At minimum, Defendant's conduct may be considered intentional because it has been made aware of its wrongdoing via the commencement of this action many months ago, but has taken no remedial action to eliminate the wrongdoing. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (citing *Lopez v. Apple, Inc.*, 519 F. Supp. 3d

672, 684 (N.D. Cal. 2021) ("At the pleading stage, … interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'") (quoting *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020))).

**4. Plaintiff Need Not Plead a Prima Facie Claim or Satisfy a Heightened Pleading Standard to Withstand the Instant Motion.**

Although Defendant implies that Plaintiff must plead a prima facie claim or satisfy a heightened pleading standard, (Def.'s Mem. at 5:1-10, 8:8-13), that is not, however, the applicable legal standard on the instant Motion. "While *Twombly* and *Iqbal* enhanced the standard of Rule 8 to require that complaints set forth a claim for relief that is plausible on its face, ***it stopped short of requiring complaints to set forth a prima facie case***." *Montantes v. Inventure Foods*, 2014 WL 3305578, at *6 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) (emphasis added). "[A] complaint need not necessarily set forth facts supporting every element of a claim in order to survive a motion to dismiss under Rule 12(b)(6)." *Id.* *Montantes* engages in a comprehensive analysis of case law to hold that the Ninth Circuit has "pulled away from a strict rule that a complaint must plead all elements of the claim." *Id.* at *7.

The Court should not apply a heightened pleading standard under Rule 9(b), which the Supreme Court has rejected for ordinary cases. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007).

**C. The Court Should Reject Defendant's Attempt to Smear Plaintiff and Her Counsel.**

The Court should reject Defendant's unseemly attempt to smear Plaintiff and her counsel. (Def.'s Mem. at 1 n.1); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . .").

Dated: May 19, 2025 PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

Dated: May 19, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell