**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
Kamran B. Ahmadian (SBN 314566)
kahmadian@bakerlaw.com
Andrew C. Burnquist (SBN 359076)
aburnquist@bakerlaw.com
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-820-8800
Facsimile: 310-820-8859

*Attorneys for Defendant*
CULLIGAN INTERNATIONAL COMPANY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBEKA RODRIGUEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CULLIGAN INTERNATIONAL COMPANY, a Delaware corporation, d/b/a WWW.CULLIGAN.COM,<br><br>Defendants. | Case No.: 3:25-cv-00225-AJB-KSC<br><br>[*Assigned to the Hon. Anthony J. Battaglia*]<br><br>**DEFENDANT CULLIGAN INTERNATIONAL COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT**<br><br>**Hearing:**<br>Date: July 24, 2025<br>Time: 2:00 p.m.<br>Courtroom: 4A |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff Has Not Established Article III Standing. ..... 2

B. Plaintiff Fails to State A Cause of Action Under Section 638.51. ..... 6

i. *The Website's AdTech Is Not A "Pen Register" or "Trap and Trace" Device* ..... 7

ii. *Plaintiff's Claim Fails Because Culligan Consented to the Use of AdTech on Its Website* ..... 8

iii. *Plaintiff Fails Allege the Required Scienter* ..... 9

C. The Court Should Disregard Plaintiff's Assertion That Culligan Attempted to "Smear" Plaintiff and Her Counsel. ..... 10

III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. 2023) .......... 4, 5

*CREEC v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) .......... 2, 3

*In re DoubleClick Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y 2001) .......... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3

*FEC v. Cruz*,
596 U.S. 289 (2022) .......... 2, 3

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. 2025) .......... 6

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......... 2, 3

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 5

*Langer v. Kiser*,
57 F. 4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 823 (2024),
*reh'g denied*, 144 S. Ct. 1132 (2024) .......... 2, 3

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 5

*Loder v. City of Glendale*,
14 Cal. 4th 846 (1997) .......... 3

*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .... 8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .... 5

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .... 3, 4, 5

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
99 F.4th 458 (9th Cir. 2024) .... 9

*Shah v. Fandom, Inc.*,
2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024) .... 8

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. 2024) .... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 2

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) .... 5

*United States v. Jenkins*,
2019 WL 1568154 (N.D. Ga. 2019) .... 6

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016) .... 6

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) .... 4, 5

*Walt Disney Parks & Resorts U.S., Inc. v. Superior Ct.*,
21 Cal. App. 5th 872 (2018) .... 9

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. 2025) .... 6

**Statutes**

California Penal Code § 638.51 .... *passim*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition to Culligan's Motion to Dismiss ("Opposition" or "Opp.") provides no valid basis for her claims to proceed. Culligan's Motion should be granted, and the FAC should be dismissed for several reasons.

*First*, Plaintiff fails to allege facts demonstrating that she has suffered an injury sufficient to establish Article III standing. She does not explain how, as a privacy tester visiting a public, retail website, she could have held a reasonable expectation of privacy in information she anticipated would be collected. Certainly as known by Plaintiff by the time she visited the Culligan website, IP addresses are exchanged and shared every time a user visits a website. Instead, Plaintiff invites the Court to relitigate cases in which she previously failed to establish standing and to recognize a reasonable expectation of privacy in IP addresses despite well-settled law to the contrary. The Court should decline both invitations.

*Second*, Plaintiff fails to state a claim for a violation of CIPA § 638.51. Plaintiff's broad definition of a "trap and trace" device lacks support in CIPA's statutory framework and the Section 638.51's plain language. The Opposition fails to substantively address the "court order" requirement in Section 638.51 and the numerous references to "telephones" in Section 638.52.

*Third*, Plaintiff's argument that she has sufficiently alleged non-consent is unavailing because it is the consent of the user of the AdTech service—not the website visitor—that is relevant under the statute. Plaintiff fails to confront Culligan's statutory interpretation argument, which demonstrates why the Court should not read a multiple-party consent requirement into a provision that expressly refers to the singular "user." Moreover, no court has recognized an "aiding and abetting" prong to the "trap and trace" portion of CIPA.

*Fourth*, Plaintiff fails to allege that Culligan intended to install an illegal trap and trace device with the requisite mental state, rendering her claim legally insufficient.

The Court should dismiss Plaintiff's FAC with prejudice.

## II. <u>ARGUMENT</u>

### A. <u>Plaintiff Has Not Established Article III Standing.</u>

At the outset, Plaintiff's Opposition misapprehends Culligan's position regarding a tester's ability to establish Article III standing, and responds to an argument that Culligan does not make. Culligan does not contend that testers can ***never*** establish "standing to sue because [they] suffered a self-inflicted injury." Opposition at 3:1–2. Both the Ninth Circuit and the Supreme Court have recognized circumstances where testers can demonstrate concrete harm sufficient to establish standing, despite the self-inflicted nature of their injuries. *See, e.g., FEC v. Cruz*, 596 U.S. 289, 296–97 (2022) (First Amendment); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (racial discrimination under the Fair Housing Act); *Langer v. Kiser*, 57 F. 4th 1085, 1094 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 823 (2024), *reh'g denied*, 144 S. Ct. 1132 (2024) (disability discrimination under the ADA); *CREEC v. Hospitality Props. Trust*, 867 F.3d 1093, 1101–02 (9th Cir. 2017) (same). Plaintiff's situation is readily distinguishable.

An intangible harm, like the dignitary harm asserted by Plaintiff, is concrete enough for Article III purposes only if the alleged injury "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). Whether any of Plaintiff's intangible harms constitute an Article III injury-in-fact hinges on whether Plaintiff has suffered a well-pleaded injury under the "close … common-law analogue." *TransUnion LLC*, 594 U.S. at 424.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The common law analogue for Plaintiff's alleged invasion of privacy harm—an invasion of privacy claim under California common law—requires pleading three "threshold issues": "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (1997). To evaluate these issues, courts ask whether there exists a "reasonable expectation of privacy" in the information. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Plaintiff's expectations and motivations in visiting the Website and the Website's content are thus not only relevant to determining standing, but dispositive. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 at *1 (C.D. Cal. Apr. 4, 2025) ("[I]nvasions of privacy [] depend on the plaintiff's reasonable expectations."). The same cannot be said of cases brought under the First Amendment, the Fair Housing Act, or the ADA, where "the plaintiffs were injured regardless of their expectations or intentions." *Id.*; *see also Langer*, 57 F.4th at 1094 (("[A] plaintiff's motive for going to a place of public accommodation is irrelevant to standing.") (citing *CREEC*, 867 F.3d at 1102)). Accordingly, Plaintiff's reliance on *Havens*, *Cruz*, *Langer*, and *CREEC* is misplaced.[1] *See Autotrader,* 2025 WL 1085787 at *1.

Plaintiff's Declaration fails to establish standing, too. *See* Declaration of Rebeka Rodriguez. That she may have had motivations beyond exposing her digital information does not alter the fact that Plaintiff not only anticipated a privacy violation, but actively sought one out. *See Autotrader*, supra, at *2 n.2 ("To be sure, Plaintiff argues that she had dual motivations for using Defendant's website, acting not just as a tester, but also as a legitimate user that simply wanted to use the

---

[1] Plaintiff's assertion that *Langer* and *CREEC* control because "ADA and CIPA cases both implicate dignitary harm to individuals" misses the mark. *See* Opposition, 4:1-2. That CIPA and ADA claims may implicate similar kinds of harm is irrelevant to the question of whether Plaintiff had a "reasonable expectation of privacy" in the information Culligan purportedly collected. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

website's services. Even assuming this to be true, it does not change the fact that she expected her privacy to be invaded, thereby negating any injury in fact."). Moreover, to the extent the Court credits Plaintiff's dubious assertion that she did not "expect" a privacy intrusion, *see* Rodriguez Decl. ¶ 5, any such expectation was plainly unreasonable. Plaintiff, a self-described consumer privacy advocate, is well-versed in the AdTech at issue (including that websites exchange/collect IP addresses to function), was visiting a public retail website, and was well aware of the information AdTech frequently collects—as demonstrated by the twenty-six digital privacy lawsuits she has filed in the past two years. *See* Motion, 1:12 n.1.

Outside of her cookie cutter declaration,[2] Plaintiff makes no attempt to show she could have a reasonable expectation of privacy despite her status as a privacy tester. Instead, Plaintiff seeks to relitigate *Autotrader* based on: (1) Judge Klausner's purported failure to address *United States v. Staves*, 383 F.3d 977 (9th Cir. 2004), *see* Opposition, 7:7-8; and (2) Judge Klausner's reliance on *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. 2023). *See* Opposition 7:5-7. Neither point is persuasive.

First, *Staves* is inapposite because it addressed the concept of consent, not the reasonableness of an expectation of privacy. *Id.*, 383 F.3d at 981. In *Staves*, the court held that a criminal defendant's knowledge of the possibility of law enforcement eavesdropping was insufficient to support a finding of implied consent to a wiretap. *Id.* Whether an individual consents to the collection of information is an entirely different question from whether the individual has a reasonable expectation of privacy in that information. Plaintiff's reliance on the court's purported "failure" to address *Staves* is particularly puzzling given that Plaintiff

[2] Plaintiff's umbrage to the characterization of her claims as "cookie cutter" rings particularly hollow given that her Declaration is virtually identical to the one she submitted in *Autotrader*. *See* Declaration of Rebeka Rodriguez In Support of Memorandum Of Points And Authorities In Support of Plaintiff's Response To Order To Show Cause at 2:15-3:1, *Rebeka Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, No. 2:24-cv-08735.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

cited to *Staves* in her response to Judge Klausner's Order to Show Cause and made precisely the same argument she now raises in her Opposition. *See* Memorandum Of Points And Authorities In Support of Plaintiff's Response To Order To Show Cause at 2:15-3:1, *Rebeka Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, No. 2:24-cv-08735.

That Judge Klausner correctly deemed *Staves* inapplicable is no reason to discount the reasoning he applied in *Autotrader*, and the Court should afford *Staves* the same weight here.

Second, the fact that the *Byars* court later upheld dismissal of Plaintiff's CIPA claim for lack of standing based on a factual challenge (as opposed to a facial challenge originally relied on) says nothing of the merits of the tester-based reasoning articulated in *Autotrader*.[3] Judge Klausner's standing analysis remains persuasive regardless of the procedural posture of *Byars* that followed the court's initial dismissal.

Even if Plaintiff could establish standing as a privacy tester, she has failed to do so here. In her Opposition, Plaintiff relies exclusively on the purported collection of her IP address to evidence a reasonable expectation of privacy. *See* Opp., 7:23-10:1. Given the complete absence of any allegations in the FAC specific to Plaintiff and her purported visit to the Website, *see* Motion, 8:4-10:20, Plaintiff's reliance on IP addresses is unsurprising. But courts have repeatedly rejected any notion of a cognizable injury based upon the collection of an IP address well after *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), was decided and the CECPA and CCPA were enacted. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889 (C.D. Cal. 2024) ("Plaintiffs do not have a legally protected privacy interest in their IP addresses[.]"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]");

[3] Plaintiff's attempt to distinguish *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) on the same grounds fails for the same reason.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gabrielli v. Insider, Inc.*, 2025 WL 522515 at *4 (S.D.N.Y. 2025) ("…an IP address which cannot identify an individual user and at most conveys general geographic information does not justify [that a legally protected privacy interest is implicated]"); *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) ("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *United States v. Jenkins*, 2019 WL 1568154 at *5 (N.D. Ga. 2019) ("Defendant Jenkins had no reasonable expectation of privacy in an IP address assigned by the Internet Service Provider[.]"); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501 at *4 (S.D.N.Y. 2025) (collecting cases). The Court should do the same here.

Because Plaintiff has failed to carry her burden to establish Article III standing, the FAC must be dismissed.



### B. <u>Plaintiff Fails to State A Cause of Action Under Section 638.51.</u>

Plaintiff asserts that "nine different" federal courts have held that "tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the California Penal Code." Opp., 1:3-19. But Plaintiff's cites to cases that, in addition to being non-binding on this Court, are unpersuasive. In *Heiting v. FKA Distributing Co. LLC*, for example, the Court supported its rejection of the defendant's failure to state a claim argument with one sentence of analysis. 2025 WL 1430663 at *2 (C.D. Cal. May 15, 2025). In *Zarif v. Hwareh.com, Inc.*, the Court based its denial largely on arguments that Culligan does not make. 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025) (rejecting application based on the *plaintiff's* purported consent and service provider exemption).

Even if the cases Plaintiff points to were factually analogous and instructive (they are not), that other federal courts have embraced incomplete or flawed reasoning regarding the applicability of Section 638.51 is no reason for the Court to do so here. As explained in detail in Defendant's Motion and ignored entirely in

Plaintiff's Opposition, the plain language of Section 638.51 and CIPA's statutory framework make clear that the Legislature never intended to address the AdTech at issue here. Because Plaintiff has failed to sufficiently allege a violation of Section 638.51, Plaintiff's claim must be dismissed.

**i. *The Website's AdTech Is Not A "Pen Register" or "Trap and Trace" Device***

The Opposition confirms that Plaintiff's flawed interpretation entirely ignores the second part of Section 638.51: "A person may not install or use a pen register or a trap and trace device ***without first obtaining a court order pursuant to Section 638.52 or 638.53.***" (emph. added). Indeed, Plaintiff fails to meaningfully address the "court order" requirement or the cross-referenced provisions (Sections 638.52 and 638.53) which outline the procedures law enforcement must complete before they can use a trap and trace device. *See* Opp., 16:6-22:25. Further, Plaintiff ignores the numerous references to telephones or telephone numbers in Sections 638.52, which makes it impossible to obtain a court order for a trap and trace device—the only way to use such a device lawfully—without identifying the telephone number or telephone line at issue.

Plaintiff nevertheless argues that Section 638.51 still applies to website technology, like the AdTech alleged here, simply because CIPA broadly defines "trap and trace device," and "electronic communications," and CIPA (as a whole) does not explicitly limit its application to telephonic surveillance. *See, e.g.*, Opp., 16:13 at n.13. Plaintiff misses the point. Whether website technology fits within CIPA's broad and vague definition of a "trap and trace device" does not end the analysis. Section 638.51 does not just make it per se unlawful to "install or use" a trap and trace device, it contains a purposeful modifier—it makes the use of such device unlawful "without first obtaining a court order pursuant to [Sections 638.52-53]." In other words, the Legislature explicitly limited the types of trap and trace

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

devices prohibited under Section 638.51 to those that could be installed or used by court order—i.e., those that can be installed or used on a telephone line. *See* Cal. Penal Code § 638.51.[4] Plaintiff fails to explain why the Legislature would prohibit the use or installation of a trap and trace device on non-telephone technology, while simultaneously preventing the issuance of a court order for that device by requiring specific telephone information.[5] This interpretation is nonsensical, would effectively make compliance with the statute impossible, and would render half of the Legislature's purposeful language entirely superfluous.

#### ii. *Plaintiff's Claim Fails Because Culligan Consented to the Use of AdTech on Its Website*

Plaintiff argues that she has sufficiently alleged non-consent because the FAC "expressly alleges ***Plaintiff's*** lack of consent." Opp., 22:12-14 (emph. added). Again, Plaintiff misses the point. Section 638.51's exception for the use of pen registers and trap and trace devices applies "if the consent of ***user of that service*** has been obtained." Cal. Pen. Code 638.51 (b)(5) (emph. added). Accordingly, it is the user of the purportedly offending service (the AdTech) whose consent must be obtained—not the user of the website. *See In re DoubleClick Privacy Litigation*, 154 F. Supp. 2d 497, 516 (S.D.N.Y 2001) (finding that because website operators are the "users" of advertising cookies placed on their website—not the website visitors—a similar consent exception in the Electronic Communications Privacy Act ("ECPA") applied). Plaintiff fails to address how, under her own allegations, she was the user of the AdTech. *See generally*, Opp; FAC, ¶ 77 ("***Defendant has installed on its Website*** a spyware pixel…") (emph. added).

---

[4] The cases cited by Plaintiff suffer from this same flawed reasoning. *See, e.g.*, Opp. at 16-22 (*citing Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367, at *2 (C.D. Cal. July 25, 2024; *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024)).

[5] Notably, Plaintiff's Opposition fails to address the substantial public policy considerations implicated by Plaintiff's strained interpretation of Section 638.51. *See* Motion, 18:9-19:18; *see generally,* Opp.

Nor does Plaintiff address Defendant's statutory interpretation argument concerning Section 638.51's use of the singular "user." *See* Motion, 20:1-24. The Court should not read Section 631(a)'s requirement that the consent of all parties must be obtained into Section 638.51, as Plaintiff impliedly asks the Court to do.[6] *See Walt Disney Parks & Resorts U.S., Inc. v. Superior Ct.*, 21 Cal. App. 5th 872, 879 (2018) (holding that where the Legislature "has chosen to include a phrase in one provision of the statutory scheme, but to omit it in another provision," courts "presume that the Legislature did not intend the language included in the first to be read into the second."). [7]

**iii. *Plaintiff Fails Allege the Required Scienter***

Plaintiff asserts that she has adequately alleged the required scienter based on four allegations in the FAC. *See* Opp., 23:26-24:12 (*citing* FAC, ¶¶ 166-70). Yet, the allegations upon which Plaintiff seeks to rely relies are plainly conclusory. *See* FAC, ¶¶ 166-70. Paragraphs 166, 168, and 170 offer nothing more than conclusions of law and wholesale recitations of the relevant penal codes, *see id.*, at ¶¶166, 168, 170, and should be disregarded as such. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).[8] Moreover, even if the Court credits Plaintiff's specious aiding and

---

[6] Moreover, Plaintiff fails to identify ***any*** authority which suggests that an aiding and abetting theory can support a claim under Section 638.51 as it can under Section 631. *See* Opp., 23:24-25:4.

[7] California rules of construction apply when Federal courts interpret California statutes. *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th Cir. 2024) ("When a federal court interprets a California statute it applies California canons of construction.").

[8] Plaintiff's reliance on the definition of "intent" in the context of torts is misplaced because Section 638.51 is a criminal statute. *See* FAC at ¶ 169 (*citing King U.S. Bank National Ass'n*, 53 Cal. App. 5th 675, 712 (2020)); *see also* Opp., 24:20-24 (same).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

abetting theory, Plaintiff's general allegations in paragraphs 167 and 169 fail to plausibly allege that ***Culligan*** acted with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts," *Smith v. YETI Coolers, LLC*, 2024 WL 4539578 at *4 (N.D. Cal. 2024), and Plaintiff's Opposition does nothing to change that. Without ***factual allegations*** demonstrating the necessary ***criminal intent***, Plaintiff's purported criminal violation fails, and must be dismissed.

### C. The Court Should Disregard Plaintiff's Assertion That Culligan Attempted to "Smear" Plaintiff and Her Counsel.

Culligan categorically rejects Plaintiff's position that it improperly slandered Plaintiff and her counsel by referencing numerous current and ongoing litigation that is substantially similar to the allegations advanced in this case. *See* Opp. at 25:21-26. Defendants should be permitted to raise these facts and any apprehensions they may have about such strategies with the Court, particularly in cases like this one, where the allegations in the complaint are generic and the repeated behavior of Plaintiff undercuts any notion of a reasonable privacy expectation.

## III. CONCLUSION

For all of the foregoing reasons and those stated in the Motion, Culligan respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: May 27, 2025 **BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian
Andrew C. Burnquist

*Attorneys for Defendant*
CULLIGAN INTERNATIONAL COMPANY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES